TRACY L. WILKISON
United States Attorney
DAVID M. HARRIS
Assistant United States Attorney
Chief, Civil Division
JOANNE OSINOFF
Assistant United States Attorney
Chief, General Civil Section
TALYA M. SEIDMAN (Cal. Bar No. 336534)
Assistant United States Attorney
JONATHAN GALATZAN (Cal. Bar No. 190414)
Assistant United States Attorney
Chief, Asset Forfeiture Section
    Federal Building, Suite 7516
    300 North Los Angeles Street
    Los Angeles, California 90012
    Telephone:  (213) 894-7137
    Facsimile:  (213) 894-7819
    E-mail:    Talya.Seidman@usdoj.gov
               Jonathan.Galatzan@usdoj.gov

Attorneys for Federal Defendants

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| EMPYREAL ENTERPRISES dba EMPYREAL LOGISTICS,<br><br>          Plaintiff,<br><br>          v.<br><br>UNITED STATES OF AMERICA, et al.,<br><br>          Defendants. | Case No. 5:22-cv-00094-JWH-SHK<br><br>**FEDERAL DEFENDANTS' OPPOSITION TO PLAINTIFF'S RENEWED APPLICATION FOR TEMPORARY RESTRAINING ORDER; MEMORANDUM IN SUPPORT; AND REQUEST FOR JUDICIAL NOTICE**<br><br>No Hearing Set<br><br><br>Honorable John W. Holcomb<br>United States District Judge |

1

**TABLE OF CONTENTS**

2                                                                                              **PAGE**

3    OPPOSITION AND MEMORANDUM IN SUPPORT .................................... 1

4    I.      INTRODUCTION ............................................................................. 1

5    II.     RELEVANT FACTS ......................................................................... 1

6    III.    PROCEDURAL BACKGROUND ..................................................... 2

7    IV.     LEGAL STANDARD ....................................................................... 3

8    V.      ARGUMENT .................................................................................... 4

9            A.     Plaintiff Is Not Likely To Succeed On The Merits ......................... 4

10                  1.      Plaintiff Has An Adequate Remedy At Law By Virtue Of The
                           Commencement Of The Administrative Forfeiture
11                         Proceedings. ..................................................................... 4

12                  2.      Plaintiff Has Failed To Satisfy Its Burden Of Proof Under The
                           Appropriations Rider. ........................................................ 7
13
                    3.      The Appropriations Rider Does Not Entitle Plaintiff To
14                         Injunctive Relief For Future Investigations. ........................ 10

15                  4.      Federal Defendants' Alleged Participation In Equitable Sharing
                           Does Not Violate Due Process. ........................................... 12
16
             B.     Plaintiff Has Failed To Establish That It Will Suffer Irreparable Harm
17                  Absent The Issuance Of A TRO. ....................................................... 13

18           C.     The Balance Of The Equities And The Public Interest Support Denial
                    Of The TRO .................................................................................... 15
19
     VI.     CONCLUSION ................................................................................. 16

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**PAGE**

**Cases**

*Acadia Tech., Inc. v. United States*,
   458 F.3d 1327 (Fed. Cir. 2006)...................................................................15

*Am. Passage Media Corp. v. Cass Commc'ns, Inc.*,
   750 F.2d 1470 (9th Cir. 1985) ...................................................................14

*Am. Trucking Ass'ns, Inc. v. City of Los Angeles*,
   559 F.3d 1046 (9th Cir. 2009) .....................................................................3

*Anderson v. United States*,
   612 F.2d 1112 (9th Cir. 1979) .....................................................................3

*Bank Melli Iran v. Pahlavi*,
   58 F.3d 1406 (9th Cir. 1995) .....................................................................12

*Bennis v. Michigan*,
   516 U.S. 442 (1996)...........................................................................12, 15

*Cannon v. United States of Am.*,
   2021 WL 4706707 (C.D. Cal. Aug. 2, 2021)................................................4

*Caribbean Marine Servs. Co. v. Baldrige*,
   844 F.2d 668 (9th Cir. 1988) .....................................................................14

*Clapper v. Amnesty Int'l USA*,
   568 U.S. 398 (2013)...................................................................................15

*Granny Goose Foods, Inc,. v. Bhd. of Teamsters & Auto Truck Drivers Loc. No. 70 of
   Alameda Cty.*, 415 U.S. 423 (1974) .............................................................3

*Herb Reed Enters., LLC v. Florida Entm't Mgmt., Inc.*,
   736 F.3d 1239 (9th Cir. 2013) ...................................................................14

*Hill v. McDonough*,
   547 U.S. 573 (2006)....................................................................................4

i

*Ibarra v. United States*,
120 F.3d 472 (4th Cir. 1997) ........................................................................ 6

*LaRouche v. Webster*,
566 F. Supp. 415 (S.D.N.Y. 1983) .............................................................. 11

*LHA Grp., Inc. v. Y'Deen/Assocs.*,
2013 WL 12121545 (C.D. Cal. Dec. 27, 2013) .......................................... 16

*Los Angeles v. Lyons*,
461 U.S. 95 (1983) ...................................................................................... 13

*Mazurek v. Armstrong*,
520 U.S. 968 (1997) ...................................................................................... 4

*McCutchen v. United States*,
145 Fed. Cl. 42 (Fed. Cl. 2019) ............................................................ 12, 16

*Monsanto Co. v. Geertson Seed Farms*,
561 U.S. 139 (2010) .................................................................................... 14

*Munaf v. Geren*,
553 U.S. 674 (2008) ...................................................................................... 3

*Olagues v. Russoniello*,
770 F.2d 791 (9th Cir. 1985) ...................................................................... 11

*Padilla v. ICE, et al.*,
953 F.3d 1134 (9th Cir. 2020) .................................................................... 15

*Ramsden v. United States*,
2 F.3d 322 (9th Cir. 1993) .......................................................................... 15

*Reno Air Racing Ass'n., Inc. v. McCord*,
452 F.3d 1126 (9th Cir. 2006) ...................................................................... 3

*Simon v. Eastern Kentucky Welfare Rights Org.*,
426 U.S. 26 (1976) ...................................................................................... 13

*Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co.*,
240 F.3d 832 (9th Cir. 2001) ........................................................................ 3

ii

*U.S. v. 434 Main Street, Tewksbury, Mass.*,
    862 F. Supp. 2d 24 (D. Mass. 2012) ...................................................... 12, 13

*U.S. v. Daleman*,
    2017 WL 1256743 (E.D. Cal. Feb. 17, 2017) ............................................. 9

*U.S. v. Dashiell*,
    2016 WL 11625686 (C.D. Cal. Dec. 21, 2016) ....................................... 9, 10

*U.S. v. Derrick*,
    163 F.3d 799 (4th Cir. 1998) ........................................................... 11

*U.S. v. Evans*,
    929 F.3d 1073 (9th Cir. 2019) ........................................................... 9

*U.S. v. Gentile*,
    782 Fed. Appx. 559 (9th Cir. 2019) ..................................................... 9

*U.S. v. Lynch*,
    903 F.3d 1061 (9th Cir. 2018) ........................................................... 8

*U.S. v. Nixon*,
    418 U.S. 683 (1974) ........................................................................ 11

*U.S. v. Olson*,
    504 F.2d 1222 (9th Cir. 1974) ........................................................... 11

*U.S. v. Pisarski*,
    965 F.3d 738 (9th Cir. 2020) ............................................................. 9

*U.S. v. Segal*,
    432 F.3d 767 (7th Cir. 2005) ............................................................ 12

*United States v. Clagett*,
    3 F.3d 1355 (9th Cir. 1993) ............................................................... 6

*United States v. Elias*,
    921 F.2d 870 (9th Cir. 1990) ........................................................... 5, 6

*United States v. Kleinman*,
    880 F.3d 1020 (9th Cir. 2017) ........................................................ 8, 10

*United States v. Martinson*,
   809 F.2d 1364 (9th Cir. 1987) ...................................................................5

*United States v. McIntosh*,
   833 F.3d 1163 (9th Cir. 2016) ...........................................................7, 8, 10

*United States v. Premises of 2nd Amendment Guns, LLC*,
   917 F. Supp. 2d 1120 (D. Or. 2012) ..........................................................7

*United States v. Sperow*,
   2018 WL 6174706 (C.D. Cal. Oct. 18, 2018) ............................................4

*United States v. U.S. Currency $83,310.78*,
   851 F.2d 1231 (9th Cir. 1988) ...................................................................4

*Video Gaming Technologies, Inc. v. Bureau of Gambling Control*,
   356 Fed. Appx. 89 (9th Cir. 2009)............................................................15

*Winter v. Natural Res. Def. Council, Inc.*,
   555 U.S. 7 (2008)..........................................................3, 4, 13, 14, 15

**Statutes**

18 U.S.C. § 983(a)(2)(B) ...............................................................................5

18 U.S.C. § 983(a)(3)(A) ...............................................................................5

18 U.S.C. § 983(f) .........................................................................................7

18 U.S.C. § 1956..............................................................................2, 13, 16

19 U.S.C. § 1608 ...........................................................................................6

21 U.S.C. § 841(a)(1)......................................................................1, 13, 16

**Rules**

Fed. R. Crim. P. 41........................................................................................4

Fed. R. Crim. P. 41(g)........................................................................4, 5, 6, 7

Fed. R. Evid. 602 .........................................................................................12

iv

## OPPOSITION AND MEMORANDUM IN SUPPORT

### I.   INTRODUCTION

Defendants United States of America, the U.S. Department of Justice ("DOJ"), Attorney General Merrick Garland, the Federal Bureau of Investigation ("FBI"), Christopher A. Wray, Kristi Koons Johnson, the Drug Enforcement Administration, and Anne Milgram (hereinafter "Federal Defendants"), by and through undersigned counsel, hereby oppose Plaintiff Empyreal Enterprises, LLC, d/b/a Empyreal Logistics ("Plaintiff") Renewed *Ex Parte* Application for Temporary Restraining Order ("TRO"). Plaintiff cannot meet the standard for the injunctive relief that it seeks and accordingly, Federal Defendants respectfully request that the motion be denied. The following Memorandum, along with Declaration of FBI Special Agent David Ricker ("Ricker Decl."), and other materials attached thereto are submitted in support of Federal Defendants' opposition.

### II.   RELEVANT FACTS

San Bernardino Sheriff's Department ("SBSD") conducted a traffic stop of the Plaintiff on November 16, 2021. Ricker Decl. ¶ 3. During the traffic stop, Plaintiff's driver and two supervisors provided conflicting statements regarding the nature and purpose of the U.S. currency being transported out of state. *Id*. ¶ 4. Probable cause was thus developed to believe that the currency in Plaintiff's vehicle represented proceeds of 21 U.S.C. § 841(a)(1), which prohibits the knowing or intentional manufacture, distribution, dispensing, or possession with intent to manufacture, distribute, or dispense a controlled substance. *Id*. As a result of the stop, SBSD seized $712,176.36 and a FBI case was opened. *Id*. ¶¶ 3-5.

The FBI initiated administrative forfeiture of the $712,176.36 and provided the FBI asset identification number of 22-FBI-000784. *Id.* ¶ 5. On January 11, 2022, the FBI sent letters to Plaintiff's counsel by certified mail providing notice of the government's seizure of and intent to forfeit the currency, along with information on the applicable procedures to contest the forfeiture. *Id.* ¶ 6, Ex. 1. Plaintiff's counsel admitted to

1

1    receiving the notice on January 18, 2022. Dkt. 36-3 (Declaration of David C. Bass
2    ("Bass Decl.")) ¶¶ 5-6, Ex. A. The letters state a deadline of February 15, 2022 to file a
3    claim to contest the forfeiture in the administrative proceedings. Ricker Decl. ¶ 6.

4            SBSD conducted a second traffic stop of the Plaintiff on December 9, 2021. *Id.* ¶¶
5    8-9. During the traffic stop, investigators learned that the driver had a document in his
6    possession instructing him what to do if he was stopped by law enforcement, particularly
7    to "NEVER SAY the words CANNABIS, or MARIJUANA" and "NEVER SAY the
8    NAMES OF THE BANKS OR CLIENTS WE SERVICE." *Id.* ¶ 8 (emphasis in
9    original). Probable cause was thus developed to believe that the currency in Plaintiff's
10   vehicle was being laundered in violation of 18 U.S.C. § 1956, which prohibits the
11   laundering of monetary instruments. *Id.* As a result of the stop, SBSD seized
12   $351,353.88 and a FBI case was opened. *Id.* ¶¶ 7-9. The FBI is in the process of
13   initiating administrative forfeitures for the funds seized as a result of the December 9,
14   2021 traffic stop. *Id.* ¶ 9.

15           Plaintiff admits that no proceeds were seized by Federal Defendants as a result of
16   a traffic stop conducted by SBSD on January 6, 2022. Dkt. 36-1 (Declaration of Deirdra
17   O'Gorman ("O'Gorman Decl.")) ¶¶ 44-47.

18   **III.    PROCEDURAL BACKGROUND**

19           On January 14, 2022, Plaintiff filed its Complaint against Federal Defendants and
20   Shannon Dicus, San Bernardino County Sheriff-Coroner. Dkt. No. 1. Plaintiff filed an
21   *Ex Parte* Application for TRO that same day, requesting injunctive relief against Federal
22   Defendants relating to the subject seizures. Dkt. No 18. Federal Defendants filed their
23   Opposition to the Plaintiff's TRO on January 15. Dkt. No. 31. On January 18, 2022, the
24   Court denied Plaintiff's TRO without prejudice for failure to comply with Rule 65's
25   notice requirement. Dkt. No. 32. On January 19, 2022, after consideration of the parties'
26   Stipulation and Joint Request for Briefing Schedule, the Court ordered Plaintiff to file its
27   renewed application for TRO that day, and Defendants to file their opposition on January
28   25, 2022. Dkt. No. 36.

## IV.    LEGAL STANDARD

The standard for issuing a temporary restraining order is "substantially identical" to that for issuing a preliminary injunction. *Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). A temporary restraining order, as a form of preliminary injunctive relief, "is an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008); *Munaf v. Geren*, 553 U.S. 674, 689-90 (2008) ("A preliminary injunction is an extraordinary and drastic remedy[.]"); *see also Reno Air Racing Ass'n., Inc. v. McCord*, 452 F.3d 1126, 1131 (9th Cir. 2006) (noting that "courts have recognized very few circumstances justifying the issuance of an ex parte TRO.").

The purpose of a TRO is to preserve the status quo and prevent irreparable harm just so long as is necessary to hold a hearing, and no longer. *See Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Loc. No. 70 of Alameda Cty.*, 415 U.S. 423, 439 (1974). Here, Plaintiff is not seeking to simply preserve the status quo but is asking the Court, via ex parte application, to decide the allegations in the Complaint and to enjoin any future federal investigations into Plaintiff's conduct. Such relief is especially disfavored. *See Anderson v. United States*, 612 F.2d 1112, 1114 (9th Cir. 1979) ("[m]andatory preliminary relief, which goes well beyond simply maintaining the status quo Pendente lite, is particularly disfavored, and should not be issued unless the facts and law clearly favor the moving party."); *see also Edmo v. Corizon, Inc.*, 935 F.3d 757, 784 n. 13 (9th Cir. 2019) (mandatory preliminary injunctions should not be issued in doubtful cases).

To obtain a preliminary injunction, the moving party must demonstrate (1) that it is likely to succeed on the merits of its claims; (2) that it is likely to suffer an irreparable injury in the absence of injunctive relief; (3) that the balance of equities tips in its favor; and (4) that the proposed injunction is in the public interest. *Winter*, 555 U.S. at 20; *see also Am. Trucking Ass'ns, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir.

3

2009) (citing *Winter*). The movant seeking the preliminary injunction bears the burden of persuasion. *See Hill v. McDonough*, 547 U.S. 573, 584 (2006); *see also Mazurek v. Armstrong*, 520 U.S. 968 (1997) (preliminary injunction not granted unless the movant, by a clear showing, carries the burden of persuasion). Plaintiff has failed to meet its burden of proof and satisfy any of these factors, and therefore its requested relief within the instant motion should be denied.

## V.    ARGUMENT

### A.    Plaintiff Is Not Likely To Succeed On The Merits

#### 1.    Plaintiff Has An Adequate Remedy At Law By Virtue Of The Commencement Of The Administrative Forfeiture Proceedings.

Plaintiff's TRO application is similar to a Fed. R. Crim. P. 41 motion or complaint which asks a court to exercise its equitable power to return seized property.[1] Rule 41 motions are generally denied when forfeiture proceedings (administrative or judicial) have been commenced, as those proceedings provide an adequate remedy at law. The same is true here. Civil forfeiture proceedings provide Plaintiff a means of challenging the seizure and recovering seized property. *United States v. U.S. Currency $83,310.78*, 851 F.2d 1231, 1235 (9th Cir. 1988) (upholding dismissal of Rule 41 motion filed before civil forfeiture proceedings were commenced, reasoning that equitable remedy not needed where civil forfeiture proceeding would allow claimant to challenge Fourth Amendment violation).

Plaintiff admits in its renewed application for TRO, that on January 11, 2022, the FBI sent to Plaintiff notice of initiation of administrative forfeiture proceedings concerning $712,176.36 in U.S. currency seized on November 16, 2021 in Barstow,

---

[1] Courts have recognized that where there are no criminal proceedings pending against the movant, motions to return property pursuant to Fed. R. Crim. P. 41(g) are treated as civil equitable proceedings, governed by the Federal Rules of Civil Procedure. *See Cannon v. United States of Am.*, 2021 WL 4706707, at *2 (C.D. Cal. Aug. 2, 2021); *United States v. Sperow*, 2018 WL 6174706, at *2 (C.D. Cal. Oct. 18, 2018) ("[Motions for return of property under Rule 41(g)] are treated as civil equitable proceedings, governed by the Federal Rules of Civil Procedure, even if they are styled as being pursuant to Rule 41.").

California. Bass Decl. ¶¶ 5-6, Ex. A; Ex. 1. Pursuant to 18 U.S.C. § 983(a)(2)(B) and the terms of the notice, the date by which Plaintiff must file a claim in the administrative forfeiture proceeding is February 15, 2022. Ex. A; Ex. 1. Once a claim is submitted, the FBI must, by statute, terminate its administrative forfeiture proceedings against the seized currency and refer the matter to the United States Attorney's Office which in turn must, within ninety days after the FBI received the claim, either (i) file a judicial forfeiture action seeking forfeiture; (ii) obtain an indictment containing an allegation that the seized currency is subject to forfeiture; or (iii) promptly release the seized currency. *See* 18 U.S.C. § 983(a)(3)(A). This is the process that Plaintiff should be invoking.[2]

Given that Plaintiff has until February 15, 2022 to submit its claim, and the government has ninety days from the date of receipt of that claim to initiate forfeiture proceedings, the government's deadline to file a judicial forfeiture action has not yet expired and requesting that the Court issue an order compelling action on the part of the government before that undetermined date is improper.

In *United States v. Elias*, 921 F.2d 870 (9th Cir. 1990), the Ninth Circuit held that administrative (as well as judicial) forfeiture proceedings provide an adequate remedy at law, precluding a district court's equitable jurisdiction to hear a motion for return for property brought under Rule 41(g) where there is no pending criminal matter. (Because Rule 41(g) movants have no other available forum in which to address their grievance, such motions, like this application for a TRO, are treated as equitable civil actions. *United States v. Martinson*, 809 F.2d 1364, 1367 (9th Cir. 1987).) In *Elias*, the

---

[2] Plaintiff is already familiar with this process because it is employing the judicial process in Kansas. Plaintiff is actively engaged in litigation seeking the return of the monies collected from marijuana dispensaries in Kansas City and bound for a Colorado credit union in the pending civil forfeiture action. *See United States of America v. $165,620.00 in United States Currency*, 6:2021-cv-01215-HLT-KGG (D. Kansas, complaint filed 9/3/2021) (Dkt. 1); Request for Judicial Notice filed concurrently, Ex. 2. The Kansas district court issued a warrant in rem and ruled that there was probable cause to seize the money. *Id.*, Dkt. 3; Request for Judicial Notice, Ex. 3. The Court can take judicial notice of these filings. *See also* https://www.usnews.com/news/best-states/kansas/articles/2021-10-27/company-challenges-seizure-of-marijuana-proceeds-in-kansas. Thus, seeking relief in this Court is duplicative and amounts to forum shopping, which is not proper.

5

government seized $14,830 and an automobile and "initiated administrative forfeiture proceedings pursuant to statute after notice to Elias." 921 F.2d at 872. The Ninth Circuit ruled that "Elias had a remedy at law pursuant to the administrative forfeiture scheme set forth in 19 U.S.C. § 1608." *Id.* Accordingly, the court affirmed the dismissal of the Rule 41(g) motion for return of property.

That no judicial forfeiture proceedings have been instituted at the time of the filing of the motion provides no justification for a Rule 41(g) motion. In *Elias*, the Ninth Circuit rejected the argument that only judicial proceedings precluded relief, explaining that administrative forfeiture proceedings "provided Elias with the procedural tools to seek judicial review of the lawfulness of the seizure of his property" and that "both procedures give the claimant an adequate remedy at law." 921 F.2d at 873. Accordingly, Plaintiff can and should raise its arguments in the forfeiture proceedings.

Several other Courts have reached the same result with respect to administrative forfeiture proceedings. *See*, *e.g.*, *United States v. Clagett*, 3 F.3d 1355, 1356 n.1 (9th Cir. 1993) ("[I]f notice was adequate, the [administrative] forfeiture proceeding provided an adequate remedy and Clagett will not be entitled to equitable relief"); *Ibarra v. United States*, 120 F.3d 472, 475 76 (4th Cir. 1997) ("[O]nce the Government initiates [administrative] forfeiture proceedings, the district court is divested of jurisdiction" to entertain a Rule 41(g) motion). Likewise, courts have reached the same result with respect to judicial forfeiture proceedings. *See*, *e.g.*, *In Re Return of Seized Property (Jordan)*, 625 F. Supp. 2d 949, 955 (C.D. Cal. 2009) (a Rule 41(g) motion is properly denied once a civil forfeiture action has been filed) (citation omitted); *In re The Seizure of All Funds...National Electronics, Inc.*, 2005 WL 2174052, *2 (S.D.N.Y. 2005) (Government's commencement of a civil judicial forfeiture the day after claimant filed a Rule 41(g) motion deprived the district court of subject matter jurisdiction over the Rule 41(g) motion).

Plaintiff cannot use its request for a TRO to shorten the 90-day deadline for the initiation of judicial forfeiture proceedings or to force the government to return property

before it has decided whether to initiate judicial forfeiture proceedings. In *United States v. Premises of 2ⁿᵈ Amendment Guns, LLC*, 917 F. Supp. 2d 1120, 1122 (D. Or. 2012), the court stated that "the cases cited by the government clearly indicate that a properly and timely initiated administrative forfeiture proceeding precludes a Rule 41(g) motion." The court held that once the government commenced an administrative forfeiture proceeding, the claimant had an adequate remedy at law for both his Fourth Amendment objections and defenses on the merits. *Id.* The court found that if the claimant had an immediate need for the property, he could have filed a hardship petition pursuant to 18 U.S.C. § 983(f). *Id.* It made no difference, the court held, that the government had yet to commence judicial forfeiture, as Congress had given the government 90 days to decide how to proceed. *Id.*

Here, as administrative forfeiture proceedings have been initiated and the seized currency has not been forfeited, Plaintiff has an adequate remedy at law. The pendency of administrative forfeiture proceedings divests this Court from hearing this request for equitable relief because Plaintiff has an adequate remedy at law available to contest the forfeiture. Plaintiff's TRO application should be denied on this basis alone

<ol start="2">
<li><u>Plaintiff Has Failed To Satisfy Its Burden Of Proof Under The Appropriations Rider.</u></li>
</ol>

Plaintiff claims that Federal Defendants are precluded from seizing Plaintiff's proceeds which were obtained as a result of the November 16 and December 9 stops due to the appropriations rider and the Ninth Circuit's holding in *United States v. McIntosh*, 833 F.3d 1163 (9th Cir. 2016). Plaintiff's allegations that Federal Defendants cannot take any action against it because it purportedly works with state-legal cannabis businesses is overbroad and unsupported by law. Furthermore, Plaintiff has critically failed to meet its burden of proving that it is in strict compliance with California medical marijuana laws and is therefore not entitled to injunctive relief under *McIntosh*. For that reason, the application should be denied.

Congress enacted the Appropriations Act of 2015, which prohibited the DOJ from

using congressionally allocated funding to prevent states from implementing their medical marijuana laws. *See* Consolidated and Further Continuing Appropriations Act Of 2015, Pub. L. No. 113–235, § 538, 128 Stat. 2130, 2217 (2014). The relevant section of the appropriations rider reads:

> None of the funds made available in this Act to the Department of Justice may be used, with respect to…California…to prevent such States from implementing their own State laws that authorize the use, distribution, possession, or cultivation of medical marijuana.[3]

Plaintiff argues that the Ninth Circuit in *McIntosh* recognized the "absolute effect of [the] appropriation rider's command." Plaintiff glosses over *McIntosh*'s clear holding that the appropriations rider only prohibits the DOJ from utilizing funds to prosecute individuals who are in *strict compliance* with state's applicable state medical marijuana laws:

> DOJ does not prevent the implementation of rules authorizing conduct when it prosecutes individuals who engage in conduct unauthorized under state medical marijuana laws. Individuals who do not strictly comply with all state-law conditions regarding the use, distribution, possession, and cultivation of medical marijuana have engaged in conduct that is unauthorized, and prosecuting such individuals does not violate [the appropriations rider]. Congress could easily have drafted [the appropriations rider] to prohibit interference with laws that address medical marijuana or those that regulate medical marijuana, but it did not. Instead, it chose to proscribe preventing states from implementing laws that authorize the use, distribution, possession, and cultivation of medical marijuana.

*McIntosh* at 1178. The Court remanded the matter back to district court to conduct evidentiary hearings to determine whether the appellants' operations strictly complied with their respective state's medical marijuana laws. *Id.* at 1179; *see also U.S. v. Lynch,*

---

[3] A nearly identical rider has been extended in every subsequent appropriations bill. *See United States v. Kleinman,* 880 F.3d 1020, 1027 (9th Cir. 2017) (describing the appropriations rider's legislative history). This includes the section referenced in Plaintiff's TRO, Consolidated Appropriations Act 2021, Pub. L. No. 116-260, § 531, 134 Stat. 1283 (2020) (amended Dec. 3, 2021). The section numbers of the rider in the Appropriations Act prohibiting DOJ action have changed over the years. For the sake of simplicity and clarity, this memorandum will refer to this provision as the "appropriations rider".

903 F.3d 1061, 1086 (9th Cir. 2018) (the appropriations rider has a limited effect and will only apply if the individual has been strictly compliant with state medical marijuana law).

The Ninth Circuit has consistently held that to succeed on a motion to enjoin use of DOJ funds on a particular prosecution, the party invoking the appropriations rider bears the burden of proving by a preponderance of the evidence that it has strictly complied with state medical marijuana laws. *See U.S. v. Pisarski*, 965 F.3d 738, 742 (9th Cir. 2020) ("no dispute" that criminal defendants bore the burden of proof to show that they had strictly complied with the California medical marijuana laws by a preponderance of the evidence); *U.S. v. Evans*, 929 F.3d 1073, 1076-77 (9th Cir. 2019) (the burden of proving strict compliance with Washington's medical marijuana laws fell on the party seeking to enjoin DOJ's prosecution); *U.S. v. Gentile*, 782 Fed. Appx. 559, 561-62 (9th Cir. 2019) (seeking to enforce the appropriations rider is a request for injunctive relief, and the party seeking the injunction bears the burden of proving strict compliance by a preponderance of the evidence); *see also U.S. v. Dashiell*, 2016 WL 11625686, *5-6 (C.D. Cal. Dec. 21, 2016) (criminal defendant failed to provide any evidence demonstrating that his conduct was authorized by California medical marijuana laws, and thus did not meet his burden of showing strict compliance); *U.S. v. Daleman*, 2017 WL 1256743, at *3 n.5 (E.D. Cal. Feb. 17, 2017) ("Congress could have, but did not, explicitly place the burden on the government in demonstrating non-compliance when it enacted the appropriations riders.").

Plaintiff in this action has failed to put forth any showing that comes close to meeting this burden. Plaintiff simply asserts that the proceeds seized by Federal Defendants were "entirely from state licensed cannabis businesses in good standing, operating lawfully under California law[.]" O'Gorman Decl. ¶¶ 30, 33. Even if Plaintiff's claims of prohibited use of appropriated funds were accurate, and Federal Defendants assert they are not, Plaintiff's claims are belied by Plaintiff's own admission in the next paragraph that not all monies carried in its vehicles were from exclusively

9

1   *medical* marijuana dispensaries. *See* O'Gorman Dec. ¶ 31 ("Three of the four cannabis
2   businesses whose cash proceeds were seized during the November 16 seizure hold
3   California medical cannabis licenses."); ¶ 15 ("A significant percentage of Empyreal's
4   cash-in-transit business does not involve the cannabis industry. These clients include
5   restaurants, convenience stores, and other cash-intensive businesses."); ¶ 13 ("*Most* of
6   Empyreal's cannabis-industry clients hold medical cannabis licenses.") (emphasis
7   added). Not only do these averments clearly fall short of proving strict compliance with
8   state medical marijuana laws by a preponderance of the evidence, Plaintiff does not even
9   provide the names or license numbers of the businesses with which it works; rather, it is
10  simply asking Federal Defendants and the Court to take it at its word. These summary
11  self-assertions of compliance with California medical marijuana laws are entirely
12  insufficient under *McIntosh*. *See U.S. v. Dashiell*, 2016 WL 11625686 (C.D. Cal. Dec.
13  21, 2016).

14      For the above reasons, Plaintiff has not shown a likelihood of success on the
15  merits of its request to enjoin Federal Defendants from using DOJ funds in its
16  prosecution of the Plaintiff.

17      3.   The Appropriations Rider Does Not Entitle Plaintiff To Injunctive
18           Relief For Future Investigations.

19      Plaintiff also requested injunctive relief against Federal Defendants enjoining
20  them from stopping, searching, and detaining the Plaintiff, as well as seizing its property
21  or possessions. This amounts to a request to preclude any future investigation of its
22  business and activities. First, this request is beyond the relief available within the
23  appropriations rider. In applying *McIntosh*, the Ninth Circuit held that the rider "only
24  prohibits the expenditure of DOJ funds in connection with a *specific charge* involving
25  conduct that is fully compliant with state laws regarding medical marijuana." *U.S. v.
26  Kleinman*, 880 F.3d 1020, 1028 (9th Cir. 2017) (emphasis in original). This requires a
27  "count by count analysis" to determine which charges, if any, are impacted. *Id*. The
28  protections of the appropriations rider only apply when the movant can prove strict

10

compliance with state medical marijuana laws in relation to specific charges that have been filed. It logically follows that the DOJ is not prohibited from using its funds to investigate activities for which the subject of the investigation has not yet been charged. Plaintiff is asking the Court to unprecedently expand the protections of the appropriations rider, with no support to invoke such relief.

Second, without the appropriations rider providing a remedy, Plaintiff seeks in effect to enjoin an investigation. In so doing, it "bears an almost insurmountable burden." *Olagues v. Russoniello*, 770 F.2d 791, 800 (9th Cir. 1985) (quoting *LaRouche v. Webster*, 566 F. Supp. 415, 417 (S.D.N.Y. 1983)). That is because investigatory decisions are committed to the Executive Branch and intruding upon that Executive Branch function risks violating the separation of powers. *Id*. at 799; *see also U.S. v. Nixon*, 418 U.S. 683, 693 (1974) ("[T]he Executive Branch has exclusive authority and absolute discretion to decide whether to prosecute a case[.]"); *U.S. v. Derrick*, 163 F.3d 799, 824-25 (4th Cir. 1998) ("The caselaw is legend from the Supreme Court and the courts of appeals that the investigatory and prosecutorial function rests exclusively with the Executive."); *U.S. v. Olson*, 504 F.2d 1222, 1225 (9th Cir. 1974) (separation of powers commands "that the courts are not to interfere with the free exercise of the discretionary powers of the attorneys of the United States in their control over criminal prosecutions."). Hence, "only in extraordinary circumstances" may courts "entertain an action to enjoin a prosecutor's investigatory activities." *Olagues*, 770 F.2d at 799. Plaintiff must show "egregiously illegal conduct" supported by a "clear basis in fact and law" supporting the extraordinary remedy it seeks. *Id*. at 799-800 (citations omitted). Plaintiff cannot meet that burden here. Courts do not function as a "'super prosecutor' empowered to monitor all prosecutorial activities on a day-to-day basis, absent compelling, extraordinary circumstances." *Id*. at 803.

Plaintiff fails to establish any circumstances so extraordinary as to permit judicial interference with the government's investigation of its activities. Therefore, its request to

11

1  enjoin Federal Defendants from stopping, searching, and detaining the Plaintiff, as well

2  as seizing Plaintiff's property or possessions, should be denied.

3       4.   Federal Defendants' Alleged Participation In Equitable Sharing Does

4            Not Violate Due Process.

5       Plaintiff speculatively and without support argues that the stops and seizures were

6  politically motivated for financial gain due to the equitable sharing program.[4] The

7  legality of asset forfeiture, the underlying conduct of which Plaintiff attacks, has long

8  been upheld. *See Bennis v. Michigan*, 516 U.S. 442, 452-53 (1996) (forfeiture is not a

9  "taking" within meaning of the Fifth Amendment); *McCutchen v. United States*, 145

10  Fed. Cl. 42, 51 (Fed. Cl. 2019) ("[T]here are certain exercises of the police power that

11  have repeatedly been treated as legitimate even in the absence of compensation to the

12  owners of the property. Among these are government actions taken… to require the

13  forfeiture of property used in connection with criminal activity.") (internal citations

14  omitted); *U.S. v. Segal*, 432 F.3d 767, 779 (7th Cir. 2005) (criminal forfeiture is not a

15  "taking" under Takings Clause); *U.S. v. $7,999.00 in U.S. Currency*, 170 F.3d 843, 845

16  (8th Cir. 1999) (civil forfeiture does not violate Takings Clause, rather it is an exercise of

17  the police power).

18       The authority to seize property does not rest on the equitable sharing program. *See*

19  *U.S. v. 434 Main Street, Tewksbury, Mass.*, 862 F. Supp. 2d 24, *32 (D. Mass. 2012).

20  The equitable sharing program gives the government discretion to share forfeited

21  property with state or local law enforcement agencies *after* a forfeiture has been fully

22  adjudicated, a final order of forfeiture has been entered by the Court, the government has

23  taken clear title to the property, and the local law enforcement agency has submitted a

24  Form DAG-71. *Id.* at *32-33. Therefore, equitable sharing is separate from a legal

25

26       [4] Federal Defendants object to the O'Gorman and Bass declarations on grounds
   of lack of foundation and hearsay. *See* Fed. R. Evid. 602, 603, 801, 802, 805; *Bank Melli*
27  *Iran v. Pahlavi*, 58 F.3d 1406, 1412-13 (9th Cir. 1995) (a declaration of an attorney must
   establish personal knowledge, not knowledge based on hearsay). One declarant cannot
28  speculate on the other's damages; such statements lack foundation. And neither declarant
   may rely on hearsay. These declarations are deficient and inadmissible.

forfeiture, and will only occur, if at all, after the Government has prevailed on its forfeiture claim. *Id*. at *33.[5] While equitable sharing may give local law enforcement an incentive to cooperate with the federal government in its pursuit of civil forfeitures, the movant must present facts showing that the equitable sharing program was the sole factor, or even a significant factor, which motivated local law enforcement to cooperate with the federal government. *Id*.

Here, Plaintiff has not provided any facts that the equitable sharing program was the sole or significant factor behind the seizure of its assets. Where speculative inferences are necessary to connect the injury to the government's challenged conduct, the federal court is not empowered to act to redress the injury. *Id*.; *see also Simon v. Eastern Kentucky Welfare Rights Org.*, 426 U.S. 26, 42-45 (1976) (no standing where it was purely speculative whether injury suffered by respondents could fairly be traced to government's action).

Plaintiff's assets were seized pursuant to local law enforcement officers' probable cause to believe that violations of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 1956 had occurred. *See* Ricker Decl. ¶¶ 3-9. Plaintiff has not demonstrated a causal connection supported by facts between its injury and the equitable sharing program. Therefore, those claims are also unlikely to succeed.

### B.    Plaintiff Has Failed To Establish That It Will Suffer Irreparable Harm Absent The Issuance Of A TRO.

The Supreme Court's "frequently reiterated standard requires plaintiffs seeking preliminary relief to demonstrate that irreparable injury is likely in the absence of an injunction." *Winter*, 555 U.S. at 22; *Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983) (an injunction is "unavailable absent a showing of irreparable injury, a requirement that cannot be met where there is no showing of any real or immediate threat that the

---

[5] As discussed above, the administrative forfeiture proceedings commenced on January 11, 2022. Even if any equitable sharing were to occur, it would only occur after Federal Defendants prevail on their forfeiture claim. Thus, any claim regarding equitable sharing is premature.

1    Petitioner will be wronged again – a 'likelihood of substantial and immediate irreparable
2    injury.'"). "Issuing a preliminary injunction based only on a possibility of irreparable
3    harm is inconsistent with our characterization of injunctive relief as an extraordinary
4    remedy that may only be awarded upon a clear showing that the plaintiff is entitled to
5    such relief." *Winter*, 555 U.S. at 22. Conclusory or speculative allegations are not
6    enough to establish a likelihood of irreparable harm. *Herb Reed Enters., LLC v. Florida*
7    *Entm't Mgmt., Inc*., 736 F.3d 1239, 1250 (9th Cir. 2013); *see also Caribbean Marine*
8    *Servs. Co. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988) ("Speculative injury does not
9    constitute irreparable injury sufficient to warrant granting a preliminary injunction.");
10    *Am. Passage Media Corp. v. Cass Commc'ns, Inc*., 750 F.2d 1470, 1473 (9th Cir. 1985)
11    (finding irreparable harm not established by statements that "are conclusory and without
12    sufficient support in facts"). Moreover, the threat of a likely injury must be "immediate."
13    *See Caribbean Marine Servs. Co.*, 844 F.2d at 674.

14         Plaintiff alleges primarily that it has suffered monetary losses, including costs
15    incurred to reimburse its clients due to the seizures. Monetary damages do not constitute
16    immediate and irreparable harm. *See Monsanto Co. v. Geertson Seed Farms*, 561 U.S.
17    139, 156-57 (2010) (a plaintiff seeking a preliminary injunction must demonstrate that
18    remedies available at law are inadequate to compensate for that injury). As discussed
19    earlier, Plaintiff may contest the forfeiture and request a legal remedy within the
20    administrative forfeiture proceedings. Plaintiff has failed to indicate how such a remedy
21    is inadequate to compensate for its alleged monetary damages.

22         The remainder of Plaintiff's alleged injuries are speculative. For example, Plaintiff
23    claims that it *expects* to lose business opportunities and investors due to the Kansas
24    seizure and the two stops in California. O'Gorman Decl. ¶ 49 (iii). Plaintiff's claim is
25    speculative by its own description. Plaintiff claims that it is losing rents on its facility,
26    but the building has not been disturbed; it is available for Plaintiff's use. *Id.* ¶ 49 (xi).
27    Plaintiff also claims projected losses if its operations are suspended, but Plaintiff's
28    operations have not been stopped or suspended. *Id.* ¶¶ 20, 49 (xiv), (xvi). Plaintiff by its

14

own admission is re-routing its drivers and is therefore self-inflicting any alleged injury. *Id.* ¶ 49 (x). Plaintiff's claims of future injuries are hypothetical and based on a conjectural injury that it has not suffered and may never suffer. *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 416 (2013) (finding standing based on fear, even one that is reasonable, "improperly waters down the fundamental requirements of Article III"). Further, any claim by Plaintiff of fear of future investigation or prosecution is not sufficient to constitute irreparable harm. *See Ramsden v. United States*, 2 F.3d 322, 326 (9th Cir. 1993).

For those reasons, Plaintiff has failed to establish a likely irreparable injury to occur in absence of a preliminary injunction.

**C.     The Balance Of The Equities And The Public Interest Support Denial Of The TRO.**

Where the government is a party to a case in which a preliminary injunction relief is sought, the balance of the equities and public interest factors merge. *Padilla v. ICE*, *et al.*, 953 F.3d 1134, 1141 (9th Cir. 2020). "In exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Winter*, 555 U.S. at 24 (citation and internal quotation marks omitted). It is well-settled that the public has a significant interest in the enforcement of criminal laws of the United States. *See Video Gaming Technologies, Inc. v. Bureau of Gambling Control*, 356 Fed. Appx. 89, *3 (9th Cir. 2009) (preliminary injunction frustrated the public's interest in enforcement of state and local criminal laws).

There are certain exercises of the police power "that ha[ve] repeatedly been treated as legitimate even in the absence of compensation to the owners of the ... property." *Acadia Tech., Inc. v. United States*, 458 F.3d 1327, 1332-33 (Fed. Cir. 2006). Among these are government actions taken to enforce prohibitions on the use or possession of dangerous contraband, or to require the forfeiture of property used in connection with criminal activity. *See e.g., Bennis v. Michigan*, 516 U.S. 442, 453

1   (1996) (holding that the forfeiture of an innocent owner's property that was used in a

2   crime was not a taking); *McCutchen v. United States*, 145 Fed. Cl. 42, 51 (2019), aff'd

3   on other grounds, 14 F.4th 1355 (Fed. Cir. 2021).

4          Federal investigations have been opened on suspicion of violations of 21 U.S.C. §

5   841(a)(1) and 18 U.S.C. § 1956, serious felonies involving contraband. *See* Ricker Decl.

6   ¶¶ 3-9. Thus, even if Plaintiff could meet the other elements to establish a TRO, they are

7   outweighed by the public interest in the ongoing criminal investigation.

8          Plaintiff has intertwined its complaints and requests for relief pertaining to the

9   California stops with its characterizations of the stops and seizures that took place in

10  Kansas in May 2021. Civil forfeiture proceedings have already commenced against

11  Plaintiff regarding those stops in U.S. District Court for the District of Kansas. Ricker

12  Decl. ¶¶ 10-12; Request for Judicial Notice filed concurrently, Ex. 2; *see also supra* n. 2.

13  In its request for relief to this Court, Plaintiff is essentially asking for a determination

14  regarding the constitutionality of the Kansas stops in May 2021. Plaintiff's attempt to

15  obtain a decision from a different court bearing weight on the Kansas stops is tantamount

16  to forum shopping, and is another reason why Plaintiff's request for a TRO in this Court

17  would not serve the public interest. *See LHA Grp., Inc. v. Y'Deen/Assocs.*, 2013 WL

18  12121545, *3 (C.D. Cal. Dec. 27, 2013) (plaintiff's forum shopping strongly favored the

19  denial of his request for injunctive relief).

20  **VI.   CONCLUSION**

21         Plaintiff has failed to meet its heavy burden to establish that it is entitled to the

22  extraordinary relief of a temporary restraining order. Federal Defendants respectfully

23  request that the Court deny Plaintiff's application.

24

25

26

27

28

1    Dated:  January 25, 2022          Respectfully submitted,

2                                    TRACY L. WILKISON
United States Attorney
3                                    DAVID M. HARRIS
Assistant United States Attorney
4                                    Chief, Civil Division
JOANNE S. OSINOFF
5                                    Assistant United States Attorney
Chief, General Civil Section
6

7                                       /s/ *Talya M. Seidman*
8                                    TALYA M. SEIDMAN
Assistant United States Attorney
9                                    JONATHAN GALATZAN
Assistant United States Attorney
10                                  Chief, Asset Forfeiture Section

11                                    Attorneys for Federal Defendants

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28