HEIDI K. WILLIAMS (CA State Bar No. 297428)
Deputy County Counsel
TOM BUNTON (CA State Bar No. 193560)
County Counsel
385 North Arrowhead Avenue, Fourth Floor
San Bernardino, California 92415-0140
Telephone: (909) 387-5455
Facsimile: (909) 387-4069
E-Mail: heidi.williams@cc.sbcounty.gov

Attorneys for Specially Appearing Defendant Shannon D. Dicus, San Bernardino County Sheriff-Coroner, in his official capacity

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| EMPYREAL ENTERPRISES, LLC, d/b/a EMPYREAL LOGISTICS<br><br>Plaintiff,<br><br>v.<br><br>The United States of America; the U.S. Department of Justice; Attorney General MERRICK GARLAND, in his official capacity; the Federal Bureau of Investigation; CHRISTOPHER A. WRAY, Director of the Federal Bureau of Investigation, in his official capacity; KRISTI KOONS JOHNSON, Assistant Director of the Federal Bureau of Investigation overseeing the FBI's Los Angeles Field Office, in her official capacity; the Drug Enforcement Administration; ANNE MILGRAM, Administrator of the Drug Enforcement Administration, in her official capacity; SHANNON D. DICUS, San Bernardino County Sheriff-Coroner, in | Case No. 5:22-cv-00094-JGB-SHK<br><br>DEFENDANT SHANNON D. DICUS' OPPOSITION TO PLAINTIFF'S RENEWED EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER<br><br><br>Honorable District Court Judge John W. Holcomb<br><br>Honorable Magistrate Judge Shashi H. Kewalramani |

//

//

1    his official capacity as the head of the
2    San Bernardino County Sheriff's
    Office.
3
                Defendants.
4

1

## **TABLE OF CONTENTS**

2   I.  INTRODUCTION ........................................................................1

3

    II.  LEGAL STANDARDS .............................................................2

4

5   III.  FACTUAL AND PROCEDURAL BACKGROUND .............................3

6       A.  Pertinent Factual Background.................................................3

7       B.  Pertinent Procedural Background .......................................5

8

9   IV.  LEGAL ARGUMENTS ............................................................6

10      A.  Plaintiff Failed to Justify The Request for Emergency Relief .............6

11
        B.  The District Court Lacks Subject Matter Jurisdiction Over At Least
12          Some of the Issues Raised in the Ex Parte Application for Temporary
13          Restraining Order......................................................................7

14      C.  Plaintiff's Application Should Be Denied Because Questions of Fact
15          Preclude a Finding That Plaintiff Is Likely to Prevail on the
            Underlying Complaint ........................................................ 10
16

17  V.  CONCLUSION............................................................. 12

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT SHANNON D. DICUS' OPPOSITION TO PLAINTIFF'S EX PARTE APPLICATION
FOR TEMPORARY RESTRAINING ORDER

1

## **TABLE OF AUTHORITIES**

2  **_Cases_**

3  *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127 (9th Cir. 2011) ......................2, 3

4  *Cooper v. Ramos*, 704 F.3d 772 (9th Cir. 2012)..........................................................8, 9

5  *Henrichs v. Valley View Dev.*, 474 F.3d 609 (9th Cir. 2007) ............................................8

6  *Kougasian v. TMSL, Inc.*, 359 F.3d 1136 (9th Cir. 2004) ................................................8

7

8  *Mission Power Eng'g Co. v. Cont'l Cas. Co.*, 883 F.Supp. 488 (C.D. Cal. 1995) ........2, 6

9  *Reno Air Racing Ass'n., Inc. v. McCord*, 452 F.3d 1126 (9th Cir. 2006).........................2

10  *Roberts v. Los Angeles City Fire Dep't*, 86 F.Supp.2d 990 (C.D. Cal. 2000)...................8

11  *Sampson v. Murray*, 415 U.S. 61 (1974) .........................................................................2

12  *Santos v. Superior Court of Guam*, 711 F.App'x 419 (9th Cir. 2018)..............................8

13  *SOB, Inc. v. Cty. of Benton*, 317 F.3d 856 (8th Cir. 2003) .............................................10

14  *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7 (2008) ...........................2

15

16

17

18  **_Statutes_**

19  CALIFORNIA PENAL CODE § 1536...........................................................................................9

20

21

22

23

24

25

26

27

28

DEFENDANT SHANNON D. DICUS' OPPOSITION TO PLAINTIFF'S EX PARTE APPLICATION
FOR TEMPORARY RESTRAINING ORDER

# I.

## INTRODUCTION

The Renewed Ex Parte Application for Temporary Restraining Order and Order to Show Cause filed on January 19, 2022 on behalf of plaintiff Empyreal Enterprises, LLC, and the underlying Complaint amount to no more than a special interest crusade against the lawful civil forfeiture process and a blatant attempt to interfere with ongoing local criminal investigations.  At a minimum, this matter is rife with questions of fact, barring the requested relief because the moving party cannot establish it is likely to succeed on its claims.

Following three traffic stops conducted after San Bernardino County Sheriff's deputies personally observed Empyreal Enterprises' drivers committing numerous California Vehicle Code violations, Empyreal Enterprises, LLC seeks to enjoin San Bernardino County Sheriff's deputies from conducting "continued unlawful and unconstitutional stops, searches, and seizures of its property, including [] pretextual stops of Empyreal's vehicles and baseless seizures of hundreds of thousands of dollars of currency that Empyreal lawfully transports for other lawful businesses to deposit into legitimate banking institutions."   Ex Parte Application Notice, Dkt. 36, 2:25-3:2.  Empyreal Enterprises' numerous unsupported factual allegations cannot be taken at face value.  The only evidence submitted so far, a conclusory and self-serving declaration from the financially invested Chief Executive Officer, is grossly deficient when considering whether to set the entire judicial process aside.

Further, the moving party improperly seeks federal court intervention into ongoing criminal investigations, state warrants, and multiple separate federal proceedings for civil forfeitures.  At a minimum, the well-settled *Rooker-Feldman* abstention doctrine creates barriers to the relief requested because the state court has found that probable cause existed for the first seizure that cannot be displaced by a de facto appeal to the federal court. Empyreal Enterprises also admits the funds taken pursuant to that warrant are the subject

DEFENDANT SHANNON D. DICUS' OPPOSITION TO PLAINTIFF'S EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER

of a federal forfeiture proceeding giving the company due process to challenge the seizure.

With this application, Empyreal Enterprises, in essence, is requesting the Court decide in any advance that any future traffic stop by the San Bernardino County Sheriff would be pretextual, no matter what traffic laws are broken. As their drivers have already exhibited a pattern of driving practices that violate the California Vehicle Code, this level of immunity from corrective action would certainly not be in the public interest.

For these reasons, presented in more detail below, San Bernardino County Sheriff-Coroner, Shannon D. Dicus, in his official capacity, respectfully requests the instant ex parte application be denied in its entirety.

II.

LEGAL STANDARDS

Ex parte relief is reserved for the most emergent circumstances. See *Mission Power Eng'g Co. v. Cont'l Cas. Co.*, 883 F.Supp. 488 (C.D. Cal. 1995). These procedures should be used sparingly because they bypass the rules that ensure decisions are fairly made on the merits, to the detriment of the adverse party.

Consistent with this general doctrine, "courts have recognized very few circumstances justifying the issuance of an ex parte [temporary restraining order ("TRO")]." *Reno Air Racing Ass'n., Inc. v. McCord*, 452 F.3d 1126, 1131 (9th Cir. 2006).

A party seeking a TRO bears the burden of establishing four essential elements: 1) the party is <u>likely</u> to succeed on the merits of the case; 2) the party is <u>likely</u> to suffer irreparable harm in the absence of preliminary relief; 3) that the balance of equities tips in the party's favor; and, 4) that the request is in the public interest. *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008). Financial injuries do not constitute "irreparable harm" because they can be remedied later by money judgment. *Sampson v. Murray*, 415 U.S. 61, 90-91 (1974).

Although the Ninth Circuit uses a "sliding scale" approach to give varied weight to each factor depending on the circumstances of each case, a moving party must still make

DEFENDANT SHANNON D. DICUS' OPPOSITION TO PLAINTIFF'S EX PARTE APPLICATION
FOR TEMPORARY RESTRAINING ORDER

1  an adequate evidentiary showing on <u>all four</u> of these elements before a TRO may be issued.

2  *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011).

3                                                              III.

4                                 FACTUAL AND PROCEDURAL BACKGROUND

5      A. <u>Pertinent Factual Background</u>

6          This matter primarily arises from three traffic stops of a Ford transit van owned by

7  Plaintiff Empyreal Enterprises, LLC, doing business as Empyreal Logistics ("Plaintiff")

8  over a three-month period of time in San Bernardino County.   Each of the stops

9  commenced with observed violations of the California Vehicle Code.

10          <u>November 2021 Traffic Stop</u>.   On November 16, 2021, a member of the San

11  Bernardino County Sheriff's Highway Interdiction Team observed a Ford van that was

12  traveling approximately six feet behind a semi-truck with attached trailer while both

13  vehicles were traveling 55 to 60 miles per hour, in violation of California Vehicle Code

14  section 21703 (following too close).   A traffic stop was conducted for that violation.

15  Declaration of Sergeant Alex Naoum ("Naoum Decl.") ¶ 4.   During the stop, the deputy

16  made further observations, including hearing inconsistent statements made by the driver

17  and company representatives, that led the deputy to believe the contents of the van were

18  illicit proceeds of unlawful drug sales. *Id.*

19          As a result, the deputy authored a search warrant for the Ford van, "to include all

20  locked safes and compartments within the vehicle" to locate any currency and/or evidence

21  of the illegal transportation of narcotics/marijuana proceeds, electronics used in the

22  commission of the illegal transportation of such proceeds, and any narcotics and/or

23  marijuana located in the vehicle.   The deputy submitted the warrant along with a statement

24  of probable cause and a statement of expertise of affiant to the Superior Court of

25  California, County of San Bernardino for consideration by a bench officer.   Judge David

26  Cohn reviewed the items submitted and issued the warrant electronically on November

27  16, 2021, at 5:26 p.m.  Naoum Decl. ¶ 5 & Ex. A.

28

DEFENDANT SHANNON D. DICUS' OPPOSITION TO PLAINTIFF'S EX PARTE APPLICATION
FOR TEMPORARY RESTRAINING ORDER

1   A search of the van was conducted on November 16, 2021, pursuant to the warrant.

2   Currency bags labeled with contents in the amount of $688,206.36 were seized pursuant

3   to the warrant.  Upon further processing, the contents of those currency bags were found

4   to be currency in the amount of $712,176.36.  The significant difference between the labels

5   and the contents of the bags seized has not been explained.  Naoum Decl. ¶ 6.

6   Plaintiff has received Notice of Seizure of Property and Initiation of Administrative

7   Forfeiture Proceedings from the United States Department of Justice dated January 11,

8   2022.  The description of seized property is "$712,176.36 U.S. Currency located in the

9   [redacted] registered to EMPYREAL ENTERPRISES LLC."  See Declaration of Counsel,

10  Dkt. 36-3, ¶ 5 & Ex. A, Dkt. 36-4.

11  <u>December 2021 Traffic Stop</u>.  On December 9, 2021, a member of the San

12  Bernardino County Sheriff's Highway Interdiction Team observed a Ford van that was

13  traveling too fast for conditions, made several multi-lane changes without signaling, and

14  then exited the interstate without signaling, all in violation of several sections of the

15  California Vehicle Code.  A traffic stop was conducted for these violations.  During the

16  stop, the deputy made further observations, including hearing inconsistent statements

17  made by the driver, that indicated the contents of the van were illicit proceeds of unlawful

18  drug sales.  Naoum Decl. ¶ 7.

19  Narcotic detection K9 Eros was deployed to conduct an air sniff on the exterior of

20  the van.  K9 Eros and his handler have trained together extensively so that the handler

21  recognizes Eros' alerts.  An untrained observer who has not worked with K9 Eros would

22  not recognize an alert.  K9 Eros alerted near the open driver's door to the odor of narcotics.

23  A further search revealed 19 currency bags.  K9 Eros alerted to the odor of narcotics on

24  these currency bags as well.  Currency bags labeled with contents in the amount of

25  $351,365.89 were seized pursuant to the probable cause search.  Upon further processing,

26  the contents of those currency bags were found in the amount of $351,353.88.  The

27  difference between the labels and the contents of the bags seized has not been explained.

28

DEFENDANT SHANNON D. DICUS' OPPOSITION TO PLAINTIFF'S EX PARTE APPLICATION
FOR TEMPORARY RESTRAINING ORDER

Naoum Decl. ¶ 8.

January 2022 Traffic Stop.  On January 6, 2022, a member of the San Bernardino County Sheriff's Highway Interdiction Team observed a Ford van that was following too close to a pickup truck, in violation of the California Vehicle Code.  A traffic stop was conducted for that violation.  No observations during the contact indicated the contents of the van were illicit proceeds of unlawful drug sales.  The driver was issued a warning. Naoum Decl. ¶ 9.

Consistent with Department policy, the deputy activated his audio recorder as he approached the van and kept it on during the entire encounter.  Based on the audio recording, at no time did the deputy state he stopped the van for "political" reasons.  The only mention of anything "political" was a comment by the van driver who explained he left employment in New York in 2017 and relocated to Las Vegas because it was getting "too political at the end."  The 22 minute 39 second recording ends with the deputy returning to his vehicle after issuing the warning to the driver.  Naoum Decl. ¶ 10.

Active Investigations.  The San Bernardino County Sheriff's Department has several active investigations into the illegal cultivation, illegal transport of narcotics, illicit sales, and trafficking of the illicit proceeds of illegal sales of narcotics.  The seizure of currency mentioned above may be evidence in those investigations.  Naoum Decl. ¶ 11.

B. Pertinent Procedural Background

On January 14, 2022, Plaintiff filed its Complaint for Declaratory and Injunctive Relief against a series of federal defendants and against San Bernardino County Sheriff-Coroner Shannon D. Dicus, in his official capacity ("Sheriff").  Dkt. 1.

On January 14, 2022, Plaintiff filed two Ex Parte Applications for Temporary Restraining Order and Order to Show Cause.  Dkt. 17 & 18.

On January 18, 2022, the Court denied the ex parte application without prejudice for failure to comply with notice requirements.  Dkt. 32.

On January 19, 2022, the parties submitted a stipulation and joint request for

DEFENDANT SHANNON D. DICUS' OPPOSITION TO PLAINTIFF'S EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER

briefing schedule.  Dkt. 36.  The Court granted a modified order setting the requested briefing schedule.  Dkt. 37.

On January 19, 2022, Plaintiff filed its Renewed Ex Parte Application for Temporary Restraining Order and Order to Show Cause, along with declarations of counsel and Empyreal Enterprises, LLC's CEO Dierdra O'Gorman.  Dkt. 36.

Specially appearing Defendant Sheriff Shannon D. Dicus, in his official capacity, ("Sheriff") hereby opposes the renewed ex parte application.

IV.

LEGAL ARGUMENTS

A. <u>Plaintiff Failed to Justify the Request for Emergency Relief</u>.

A party who seeks to circumvent the standard litigation process must justify the request by explaining the emergency nature of the matter.  That justification is all the more important when no party has appeared in response to a summons in the related litigation.  Plaintiff has not submitted sufficient evidence to demonstrate the emergency nature of the application.  Indeed, no portion of the application squarely addresses this threshold issue.  Accordingly, this matter is not entitled to elevation above all other issues pending before the court.

To seek ex parte relief, the moving party must explain why "the ultimate relief requested cannot be calendared in the usual manner. In other words, it must show why the moving party should be allowed to go to the head of the line in front of all other litigants and receive special treatment." *Mission Power Eng'g Co. v. Cont'l Cas. Co.*, 883 F.Supp. 488, 492 (C.D. Cal. 1995).  "First, the evidence must show that the moving party's cause will be irreparably prejudiced if the underlying motion is heard according to regular noticed motion procedures.  Second, it must be established that the moving party is without fault in creating the crisis that requires ex parte relief, or that the crisis occurred as a result of excusable neglect." *Id.*

Without squarely addressing the emergency nature of the instant application,

DEFENDANT SHANNON D. DICUS' OPPOSITION TO PLAINTIFF'S EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER

Plaintiff simply argues the company is "likely to suffer irreparable harm" if the application is not granted, which is an element of a motion heard on the standard timeframe.  See Application, Dkt. 36, 23:12-24:26.  In making this argument, addressed further below, Plaintiff's Chief Executive Officer Dierdra O'Gorman speculates that the company has lost "potential clients" (in Colorado, not California) and anticipates reputational harm and expects negative effect on business, not that these have already occurred.  *Id.*; Declaration of Dierdra O'Gorman ("O'Gorman Decl.") ¶ 49.  These conclusory allegations are not supported by any financial analyses, documents, or other evidence of any kind that indicates this matter is a dire emergency for the business.

Further, Plaintiff seems to have created several of the alleged hardships.  Ms. O'Gorman contends Plaintiff *chose* to avoid the entire State of Kansas, *chose* to forego new business in the Midwest, *chose* to suspend development of a currency processing facility and to avoid San Bernardino County, and *chose* to reimburse its clients the money that was seized pursuant to lawful traffic stops and after probable cause was established.  Ms. O'Gorman contends these business choices prevent Plaintiff from meeting client demand to *expand*, not to operate at all.  *Id.*  Again, no legitimate emergency exists from crises created by the moving party.

These unsubstantiated fears and unsupported conclusory allegations fail to justify elevating this matter ahead of the routine business of the court.

B.  The District Court Lacks Subject Matter Jurisdiction Over at Least Some of the Issues Raised in the Ex Parte Application for Temporary Restraining Order.

The well-settled *Rooker-Feldman* doctrine prohibits the federal district court from reviewing the validity of state court proceedings, including the validity of searches and seizures made pursuant to a warrant issued by a state court.  Plaintiff contends that the seizures at issue in this case were made without probable cause because its business is entirely lawful.  Plaintiff's challenge to the November 2021 warrant, which was supported by probable cause, in this forum is an improper *de facto* appeal of the validity of a state

court decision because it would require the federal court to reach a different conclusion than the state court. The de facto appeal and all "inextricably intertwined" matters should be disregarded.

The *Rooker-Feldman* doctrine prevents a federal district court from exercising jurisdiction over a direct appeal or a "de facto appeal" from a state court decision. *Cooper v. Ramos*, 704 F.3d 772, 777 (9th Cir. 2012) (citing *Noel v. Hall*, 341 F.3d 1148 (9th Cir. 2003)). The doctrine applies "not only to final judgments, but also to 'interlocutory state court decisions.'" *Santos v. Superior Court of Guam*, 711 F. App'x 419, 420 (9th Cir. 2018) (quoting *Doe & Assocs. Law Offices v. Napolitano*, 252 F.3d 1026, 1030 (9th Cir. 2001)).

De facto appeals are those where a party is (1) asserting as his legal injury legal error by the state court and (2) seeks as his remedy relief from the state court decision. *Kougasian v. TMSL, Inc.*, 359 F.3d 1136, 1140 (9th Cir. 2004); see also *Henrichs v. Valley View Dev.*, 474 F.3d 609, 613 (9th Cir. 2007). "To determine whether an action functions as a de facto appeal, [courts] pay close attention to the relief sought by the federal-court plaintiff." *Santos*, 711 F.App'x at 420 (quoting *Cooper*, 704 F.3d at 777-78). "[A] district court cannot review state court decisions 'in particular cases arising out of judicial proceedings even if those challenges allege that the state court's action was unconstitutional.'" *Roberts v. Los Angeles City Fire Dep't*, 86 F.Supp.2d 990, 993 (C.D. Cal. 2000) ("*Roberts*") (citing *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983)). "The fundamental and appropriate question to ask is whether the injury alleged by the federal plaintiff resulted from the state court judgment itself or is distinct from that judgment." *Roberts*, 86 F.Supp.2d at 993 (citing *Young v. Murphy*, 90 F.3d 1225 (7th Cir. 1996)).

When a plaintiff brings a de facto appeal, the doctrine also precludes district court jurisdiction over any issue that is "inextricably intertwined" with the state court's decision. *Cooper v. Ramos*, 704 F.3d 772, 777 (9th Cir. 2012). A claim is "inextricably

DEFENDANT SHANNON D. DICUS' OPPOSITION TO PLAINTIFF'S EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER

1  intertwined" with a state court decision "if the general claim succeeds only to the extent
2  that the state court wrongly decided the issues before it." *Id.* at 778 (quoting *Pennzoil*
3  *Co. v. Texaco, Inc.*, 481 U.S. 1, 25 (1987)).

4        In the instant case, Plaintiff contends the company's civil rights were violated in
5  part by the seizure of funds in November 2021.  Complaint, Dkt. 1 ¶¶ 331-350, 372-391.
6  The company has attempted to secure a return of those funds outside the legal process
7  available in state court (see CALIFORNIA PENAL CODE § 1536) by directly demanding the
8  Sheriff's Department return the funds.  Complaint, Dkt. 1 ¶¶ 140-142.  Not having been
9  successful with that tactic, Plaintiff now challenges the entire operation, including the
10 validity of the warrant that was issued by the Superior Court of California, County of San
11 Bernardino in federal district court.   Naoum Decl. ¶¶ 4-6 & Ex. A.   That challenge
12 constitutes a de facto appeal because Plaintiff contends the Sheriff did not have probable
13 cause to support the warrant and that the entire purpose was for financial gain to the
14 Department.  The alleged invalidity of the warrant is a necessary component of Plaintiff's
15 appeal because anything else would contradict Plaintiff's baseline contention that all its
16 activities and its clients' activities were lawful.  Although Plaintiff contends the stop itself
17 was pretextual, which is potentially separate activity, the crux of the case is that the
18 defendants have no right to *take* the money.  Accordingly, to find for Plaintiff, the federal
19 court would have to invade the purview of the state court and render the warrant improper.
20 The *Rooker-Feldman* doctrine precludes this de facto appeal.

21       Further, all of Plaintiff's allegations against the Sheriff are arguably "inexplicably
22 intertwined" with the lawful November 2021 seizure pursuant to a warrant.   Plaintiff
23 contends the three stops constitute a "pattern" of conduct that can establish municipal
24 liability.  If the district court cannot consider the first seizure as unlawful given the
25 existence of a state court warrant, that leaves only one other seizure to be considered.  By
26 definition, one instance of allegedly unconstitutional conduct does not establish a pattern.

27       Given this well-settled jurisdictional bar, the specially appearing Sheriff requests
28

9

DEFENDANT SHANNON D. DICUS' OPPOSITION TO PLAINTIFF'S EX PARTE APPLICATION
FOR TEMPORARY RESTRAINING ORDER

the court deny Plaintiff's application for temporary restraining order in its entirety without considering the merits of the request.

C. Plaintiff's Application Should Be Denied Because Questions of Fact Preclude a Finding That Plaintiff Is Likely to Prevail on the Underlying Complaint.

If the Court exercises jurisdiction over any portion of this matter, the outcome of Plaintiff's entire application rests on the Court being able to conclude that Plaintiff's business in California is conducted in an entirely lawful manner with entirely law-abiding clients.  Otherwise, the Sheriff is authorized to investigate alleged criminal activity and Plaintiff cannot prevail on its claim that the acts were *ultra vires* or unconstitutional.  As the funds secured from Plaintiff's possession in November and December 2021 may be evidence in ongoing criminal investigations, Plaintiff has not met this burden and it would be appropriate to deny the application in its entirety.

As noted in Section II, Legal Standards, above, Plaintiff is required to make a sufficient evidentiary showing on each of four essential elements for each separate request before a temporary restraining order may issue.  "Ordinarily, a federal court will not enjoin enforcement of a state criminal law, even though unconstitutional. 'To justify such interference there must be exceptional circumstances and a clear showing that an injunction is necessary in order to afford adequate protection of constitutional rights.'" *SOB, Inc. v. Cty. of Benton*, 317 F.3d 856, 866 (8th Cir. 2003) (citing *Wooley v. Maynard,* 430 U.S. 705 (1977)).

Critically deficient is the evidence presented to support Plaintiff's contention that it is likely to prevail on any claim.  Plaintiff has not presented evidence other than the self-serving and conclusory declaration of its financially interested CEO to support this notion. It is unclear, for example, how Ms. O'Gorman has personal knowledge to make such sweeping statements under penalty of perjury pertaining to the supposed lawfulness of every client's business activity, or that K9 Eros did not alert on the van and money in the December 2021 stop.  See Naoum Decl. ¶ 8 ("An untrained observer who has not worked

DEFENDANT SHANNON D. DICUS' OPPOSITION TO PLAINTIFF'S EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER

with K9 Eros would not recognize an alert.").

In contrast, the Sheriff has provided details about each of the stops from a knowledgeable declarant that calls Plaintiff's conclusions into significant doubt.  Most importantly, Sergeant Alex Naoum has declared that the Sheriff's Department has "several active investigations into the illegal cultivation, illegal transport of narcotics, illicit sales, and trafficking of the illicit proceeds of illegal sales of narcotics."  Naoum Decl. ¶ 11.  Ms. O'Gorman would not be privy to these investigations.  Further, the currency seized from Plaintiff on two occasions "may be evidence in those investigations."  *Id.*

Additionally, Plaintiff's contentions pertaining to the "political" reasons for the third stop (January 2022) are contradicted by a contemporaneous recording.  Plaintiff's own driver is the only person captured on the deputy's audio belt recording that uses that word "political" during the encounter.  The van driver explains that he left employment in New York in 2017 and moved to Las Vegas because it was "getting too political at the end."  Naoum Decl. ¶ 10.

Even the question of whether granting the instant application would be in the public interest falters due to the questions of fact raised by the Sheriff.  Barring traffic stops based on Plaintiff's self-serving and unsupported contentions that its business is entirely lawful, which is in dispute, would grant Plaintiff's driver's license to disregard all safety laws.  Hypothetically, if the application is granted, Plaintiff's drivers could travel in a reckless manner on busy Southern California highways with immunity because the Sheriff would not be permitted to stop them.  Plaintiff's drivers have already shown a propensity to violate traffic laws and could now do so without consequence.  That outcome would certainly not serve the public interest.  Accordingly, the balance of equities do not tip in Plaintiff's favor based solely on speculative business losses.

Given the questions of fact raised by the evidence provided by the Sheriff in opposition to the Application, Plaintiff cannot establish it is likely to prevail on the underlying claim and it is appropriate to deny this application.

DEFENDANT SHANNON D. DICUS' OPPOSITION TO PLAINTIFF'S EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## V.

## CONCLUSION

As presented above, Plaintiff failed to establish it is entitled to emergency relief, and the Court lacks subject matter jurisdiction over the propriety of state court actions and any inexplicably intertwined matters.  Additionally, if the court considers the merits of the requests, Plaintiff has not presented sufficient evidentiary support to indicate it is entitled to any of the requested relief.  Accordingly, specially appearing Defendant Shannon D. Dicus, San Bernardino County Sheriff-Coroner, in his official capacity, respectfully requests the Court deny Plaintiff's Renewed Ex Parte Application for a Temporary Restraining Order without further consideration.

DATED: January 25, 2022                     Respectfully submitted,

                                            TOM BUNTON
                                            County Counsel

                                            */s/ Heidi K. Williams*
                                            HEIDI K. WILLIAMS
                                            Deputy County Counsel
                                            Attorneys for Specially Appearing Defendant
                                            Shannon D. Dicus, San Bernardino County
                                            Sheriff-Coroner, in his official capacity

DEFENDANT SHANNON D. DICUS' OPPOSITION TO PLAINTIFF'S EX PARTE APPLICATION
FOR TEMPORARY RESTRAINING ORDER

1

2

**PROOF OF SERVICE**

3

I am employed in the County of San Bernardino, State of California. I am a citizen of the United States, employed in the County of San Bernardino, State of California, over the age of 18 years and not a party to nor interested in the within action. My business address is 385 North Arrowhead Avenue, Fourth Floor, San Bernardino, CA 92415-0140.

4

5

6

On January 25, 2022, I served the following documents (*specify)*:      Defendant Shannon D. Dicus' Opposition to Plaintiff's Ex Parte Application for Temporary Restraining Order; Declaration of Sergeant Alex Naoum In Opposition to Plaintiff's Ex Parte Application for Temporary Restraining Order; Exhibit A

7

8

9

David C. Bass
Jerome Satran
Koeller, Nebeker, Carlson & Haluck LLP
1478 Stone Point Drive, Suite 435
Roseville, CA  95661
T: (916) 724-5700
F: (916) 788-2850
E: David.bass@knchlaw.com
**Attorneys for Plaintiff**

10

11

12

13

14

15

16

17

I served the documents on the persons listed above, as follows:

18

☒      **By Electronic Service.**

19

20

I declare under penalty of perjury under the laws of the United States of America, that the above is true and correct.

21

22

Dated:  January 25, 2022                  */s/ Heidi K. Williams*
                                                    Heidi K. Williams, Declarant

23

24

25

26

27

28

DEFENDANT SHANNON D. DICUS' OPPOSITION TO PLAINTIFF'S EX PARTE APPLICATION
FOR TEMPORARY RESTRAINING ORDER