**KOELLER, NEBEKER, CARLSON & HALUCK LLP**
David C. Bass (Cal. Bar No. 296380)
david.bass@knchlaw.com
Jerome Satran (Cal Bar. No. 188286)
jerry.satran@knchlaw.com
1478 Stone Point Drive, Suite 435
Roseville, CA 95661
(916) 724-5700
(916) 788-2850 (fax)

**INSTITUTE FOR JUSTICE**
Dan Alban (admitted *pro hac vice*)
dalban@ij.org
Kirby Thomas West (admitted *pro hac vice*)
kwest@ij.org
901 North Glebe Road, Suite 900
Arlington, VA 22203
(703) 682-9320
(703) 682-9321 (fax)

*Counsel for Plaintiff*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA
### EASTERN DIVISION

| | |
|---|---|
| EMPYREAL ENTERPRISES, LLC,<br><br>  Plaintiff,<br><br>  v.<br><br>UNITED STATES OF AMERICA, et al.,<br><br>  Defendants. | Case No.: 5:22-cv-00094-JWH-SHKx<br><br>**PLAINTIFF'S REPLY TO FEDERAL DEFENDANTS' OPPOSITION TO PLAINTIFF'S RENEWED APPLICATION FOR TEMPORARY RESTRAINING ORDER**<br><br>Honorable John W. Holcomb<br>Complaint Filed 1/14/22 |

# TABLE OF CONTENTS

Page

I. A TRO is Necessary to Preserve the Status Quo ............................................. 1

II. The Federal Defendants Have Failed to Refute Empyreal's Likelihood of Success on the Merits ........................................................................................ 2

    A. Forfeiture proceedings do not provide an adequate remedy ................. 3

    B. Plaintiff has more than satisfied its burden of proof ............................. 3

    C. Plaintiff is not seeking to enjoin future investigations .......................... 7

    D. Plaintiff has not requested a TRO based on its Due Process Claim ..... 9

III. Empyreal is Suffering and Will Continue to Suffer Irreparable Harm Absent a TRO ................................................................................................................. 9

IV. The Equities and Public Interest Strongly Favor Issuing a TRO .................. 11

V. Conclusion ..................................................................................................... 11

# TABLE OF AUTHORITIES

**Cases**

*Adidas America, Inc. v. Skechers USA, Inc.*, 890 F.3d 747 (9th Cir. 2018)............10

*American Trucking Associcates, Inc. v. City of Los Angeles*,
    559 F.3d 1046 (9th Cir. 2009) ..................................................................10

*California v. Azar*, 911 F.3d 558 (9th Cir. 2018) .......................................................10

*Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers*,
    415 U.S. 423 (1974) ..................................................................................2

*National Organization for Reform of Marijuana Laws (NORML) v. Mullen*,
    608 F. Supp. 945, 965 (N.D. Cal. 1985)....................................................1

*Reeside v. Walker*, 52 U.S. 272 (1850) .......................................................................5

*Sierra Club v. Trump*, 929 F.3d 670 (9th Cir. 2019) .................................... 8, 10, 11

*Stauber v. City of New York*,
    No. 03 CIV.9162 RWS, 2004 WL 1683166 (S.D.N.Y. July 27, 2004).................1

*Stuhlbarg International Sales Co. v. John D. Brush & Co.*,
    240 F.3d 832 (9th Cir. 2001) ..................................................................9

*U.S. Department of Navy v. Federal Labor Relations Authoroty,*
    665 F.3d 1339 (D.C. Cir. 2012)................................................................ 5

*United States v. Kleinman*, 880 F.3d 1020 (9th Cir. 2017) ................................7, 8

*United States v. McIntosh*, 833 F.3d 1163, 1172 (2016) .......................................3, 8

*Weinberger v. Romero-Barcelo*, 456 U.S. 305, 320 (1982) ...................................11

**Constitutional Provisions**

Mo. Const. art. XIV, § 1 .................................................................................6

**Statutes**

Cal. Bus. & Prof. Code §§ 26000 *et seq.* ..................................................................6

Consolidated Appropriations Act 2021, Pub. L. No. 116-260, § 531,
    134 Stat. 1283 (2020) ..................................................................5

In their Opposition to Plaintiff's application for a TRO, the Federal Defendants offer a variety of reasons why the application should be denied, several of which are irrelevant to the TRO application, and none of which are persuasive. Plaintiff hereby responds to the arguments raised and emphasizes its urgent need for immediate relief from Defendants' ongoing constitutional and statutory violations targeting its vehicles in San Bernardino County and elsewhere.

## I.   A TRO is Necessary to Preserve the Status Quo.

As an initial matter, the Federal Defendants repeatedly misrepresent the scope of Plaintiff's requested TRO. Plaintiff is not asking this Court to halt an ongoing investigation or interfere with ongoing civil forfeiture proceedings. It merely requests that Defendants be enjoined from stopping, detaining, or seizing Plaintiff's personnel or vehicles, or the contents therein, absent articulable, particularized reasonable suspicion or probable cause of criminal conduct. *See* Prop. Order 3–4 (ECF No. 36-5). And for the reasons set forth in the Complaint and opening memorandum, it requests that, in the context of Empyreal's cash-in-transit business, knowledge or belief that the personnel or vehicles are transporting the proceeds of state-licensed cannabis sales not constitute a valid basis for reasonable suspicion or probable cause. *Id.* This limited injunction is properly tailored to protect Plaintiff from Defendants' unlawful and unconstitutional actions against Empyreal while respecting Defendants' lawful law-enforcement needs. *Cf.*, *e.g.*, *Nat'l Org. for Reform of Marijuana L. (NORML) v. Mullen*, 608 F. Supp. 945, 965 (N.D. Cal. 1985) (enjoining warrantless searches, seizures, and helicopter surveillance of homes and curtilages of persons living near rural marijuana "gardens"); *Stauber v. City of New York*, No. 03 CIV.9162 RWS, 2004 WL 1683166, at *1 (S.D.N.Y. July 27, 2004) (enjoining NYPD's bag search policy).

Such a TRO would also appropriately preserve the status quo that existed prior to Defendants' unreasonable stops, searches, and seizures. Far from "decid[ing] the allegations in the Complaint" or "enjoin[ing] any future federal

investigations into Plaintiff's conduct," Opp. 3, a TRO would simply restrain Defendants from continuing to target Empyreal vehicles for pretextual stops, searches, and seizures, as is currently happening. Under the TRO, the Defendants could still: continue any criminal investigations; continue their current forfeiture actions against Empyreal; and even stop and search Empyreal vehicles when they have articulable, particularized reasonable suspicion or probable cause, so long as those stops and searches are not based on the knowledge or belief that that the vehicle is transporting proceeds of state-legal cannabis sales. *See* Prop. Order 3–4 (ECF No. 36-5). Meanwhile, with this TRO in place, Empyreal could continue to lawfully operate its business during the pendency of this suit, just as it did before Defendants began their campaign of pretextual stops, searches, and seizures. Injunctive relief would thus preserve the status quo, which—as the Federal Defendants acknowledge—is "the purpose of a TRO." Opp. 3; *see also Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers*, 415 U.S. 423, 439 (1974).

Because Empyreal's requested relief serves the very purpose of a TRO and because (1) Empyreal is likely to succeed on the merits; (2) Empyreal is suffering and will continue to suffer substantial irreparable harm without such relief; and (3) the equities and public interest lie in favor of an injunction, this Court should issue a TRO and an order to show cause why a preliminary injunction should not issue.

**II.     The Federal Defendants Have Failed to Refute Empyreal's Likelihood of Success on the Merits**.

As thoroughly outlined in Plaintiff's Complaint and opening TRO brief, the Federal Defendants' stops, searches, and seizures of Empyreal's personnel and vehicles are outside the scope of their congressionally granted authority, and are therefore *ultra vires*, because they interfere with implementation of state-legal medical cannabis laws. *See* Compl. ¶¶ 304–30; Mem. 16–19. The Federal Defendants do not dispute the merits of this *ultra vires* claim. They do not dispute

that they have spent funds to stop, search, and seize Empyreal's vehicles and their contents. And they do not dispute that their stops, searches, and seizures prevent states from giving practical effect to their medical cannabis laws, including Cal. Bus. & Prof. Code § 26260(a), which specifically authorizes the transportation of cash from state-licensed medical cannabis businesses in California. The Federal Defendants instead erect—and attempt to knock down—strawman arguments, none of which undermines Empyreal's likelihood of success on the merits.

### A. Forfeiture proceedings do not provide an adequate remedy.

The Federal Defendants argue that this Court should not issue a TRO because Empyreal can seek the return of its seized property in civil forfeiture proceedings. *See* Opp. 4–7. But Empyreal does not seek return of its property with this TRO. Instead, the proposed TRO seeks only injunctive and declaratory relief to prevent *future* stop, searches, and seizures. *See* Prop. Order 3–4 (ECF No. 36-5). Because this action seeks only to foreclose *future* harms caused by Defendants' unconstitutional stops, searches, and seizures—and *not* the return of already seized property—any remedies available through civil forfeiture proceedings are insufficient and irrelevant to Empyreal's request for a TRO and this action itself.

### B. Plaintiff has more than satisfied its burden of proof.

The Ninth Circuit has emphatically recognized that once Congress has delineated its "order of priorities in a given area," such as prescribing where money may or may not be spent, "it is for the courts to enforce them when enforcement is sought." *United States v. McIntosh*, 833 F.3d 1163, 1172 (2016) (cleaned up). And because Congress has specifically restricted DOJ and its subsidiary agencies from spending money to prevent states from implementing their own medical cannabis laws, individuals "may seek to enjoin the expenditure of those funds." *Id.* at 1173. Here, the Federal Defendants do not dispute that they are using funds to interfere with states' medical cannabis laws. Instead, they argue

that Empyreal has not demonstrated its strict compliance with state law. The record before this Court belies this argument.

Empyreal has sufficiently demonstrated its strict compliance with California's and Missouri's medical cannabis laws, particularly in the absence of any allegations from the Defendants of any noncompliance. The sworn declarations of Empyreal's CEO, Deirdra O'Gorman, repeatedly attest to Empyreal's and its clients' compliance with those state laws, and the Federal Defendants have not offered any evidence to contradict her sworn statements. *See, e.g.*, ECF 36-1 ("Jan. 13 O'Gorman Decl."), ¶¶ 10–11, 13, 16–17, 25, 31, 33–34; January 27, 2022 Deirdra O'Gorman Supplemental Declaration ("O'Gorman Suppl. Decl."), ¶¶ 10–15, Exs. A–B; *see also* Compl. ¶¶ 13, 15, 51–52, 56, 67–69, 72, 76, 93, 112, 141, 144, 207–09, 292, 344–45, 380–82.

For example, Empyreal's CEO—who has more than 26 years of experience as a financial services executive and runs a regulatory compliance firm—declared that "Empyreal contracts *only with* state-legal cannabis businesses that have established banking relationships with financial institutions with anti-money laundering law programs implemented pursuant to the 2014 FinCEN Guidance Regarding Marijuana-related Business ("2014 FinCEN Guidance") and applicable state-issued guidance." Jan. 13 O'Gorman Decl. ¶ 16 (emphasis added). She further declared, with respect to each seizure, that the vehicles were transporting proceeds exclusively from state-licensed cannabis facilities *operating lawfully* under state law. *Id.* at ¶¶ 25, 30, 33. She further testified that all but one of these cannabis businesses held a state medical cannabis license. *Id.* at ¶ 25 ("The cash proceeds being transported by Empyreal's vehicle during the May 18 seizure were *entirely* from state-licensed medical cannabis dispensaries. . . .") (emphasis added)); *id.* at ¶ 31 ("Three of the four cannabis businesses whose cash proceeds were seized during the November 16 seizure hold California medical cannabis licenses."); *id.* at ¶ 34 ("All four cannabis businesses whose cash proceeds were

seized during the December 9 seizure hold California medical cannabis licenses."). Indeed, a license search for each of these businesses confirms that each one holds at least one state-issued cannabis license in good standing, demonstrating their compliance with state law. O'Gorman Suppl. Decl. ¶¶ 11–15, Exs. A, B. This evidence—which the Defendants have not contradicted with any allegation, let alone evidence—is more than sufficient to demonstrate Empyreal's strict compliance by a preponderance of the evidence.

In an effort to skirt past this competent, sufficient evidence of compliance, the Federal Defendants make much ado about the fact that Empyreal also serves adult-use cannabis businesses and non-cannabis businesses. This is irrelevant.[1] The Federal Defendants *may not spend a single dollar* on efforts that prohibit a state from implementing its own laws regarding medical cannabis. *See* Consolidated Appropriations Act 2021, Pub. L. No. 116-260, § 531, 134 Stat. 1283 (2020) (amended Dec. 3, 2021) ("Rohrabacher-Farr Amendment"); *see also Reeside v. Walker*, 52 U.S. 272, 291 (1850) ("However much money may be in the Treasury at any one time, not a dollar of it can be used in the payment of any thing not thus previously sanctioned."); *U.S. Dep't of Navy v. Fed. Lab. Rels. Auth.,* 665 F.3d 1339, 1342 (D.C. Cir. 2012) (holding that the Navy may not even buy bottled water absent congressional appropriation). The Federal Defendants have not denied and cannot deny that they have violated this prohibition by Congress.

For instance, during the May 18 seizure, in which the Federal Defendants played a crucial role, Jan. 13 O'Gorman Decl. ¶¶ 24–26, every last dollar of the cash proceeds seized came from a state-licensed medical cannabis dispensary. *Id.* ¶ 25. And because Missouri does not permit adult-use cannabis sales, *see* Mo.

---

[1] The Federal Defendants' acknowledgment that Empyreal serves non-cannabis clients only highlights the impropriety of their actions and the need for immediate injunctive relief. There is certainly no justification for pretextual stops, searches, and seizures against vehicles transporting proceeds from, e.g., grocery stores.

Const. art. XIV, § 1, all of the proceeds necessarily came from state-legal *medical* cannabis sales. Jan. 13 O'Gorman Decl. ¶ 25. In fact, the Federal Defendants followed and surveilled Empyreal as its driver traveled to these state-licensed medical cannabis facilities immediately before the May 18 seizure. *Id.* ¶ 26. There can thus be no question that *the Federal Defendants knew at the time of the May 18 seizure that the proceeds were from state-legal medical cannabis proceeds*, even though they do not have any authority to spend federal funds interfering with Missouri's state-legal medical cannabis industry by seizing those proceeds.

Similarly, three of the four dispensaries in the November 16 seizure hold medical-cannabis licenses, and all of the dispensaries involved in the December 9 seizure hold medical-cannabis licenses. Because of the Federal Defendants' actions there, Empyreal was not able to transport proceeds from any of these state-licensed medical-cannabis businesses and fill the cash-transportation needs that the State of California has legislatively determined is necessary for its medical-cannabis industry. *See* Cal. Bus. & Prof. Code §§ 26000 *et seq.* And it has stopped Empyreal from continuing to offer its services in San Bernardino County. Disrupting the financial infrastructure necessary to support medical-cannabis businesses—such as by repeatedly seizing bank deposits of medical-cannabis businesses from cash-in-transit businesses and forcing them to suspend service—necessarily prevents states from implementing their own medical-cannabis laws. The Federal Defendants have thus repeatedly interfered with California's and Missouri's implementation of their state medical-cannabis laws and will continue to do so until they are enjoined. *See, e.g.*, January 27, 2022 David Bass Supplemental Declaration ("Bass Suppl. Decl."), ¶¶ 16–19.

Moreover, it is plain from their brief, *see* Opp. 9–10, that the Federal Defendants appear to believe that exactly the converse of the Rohrabacher-Farr spending prohibition is true. That is, the Federal Defendants imply they are entitled to spend federal funds seizing *any* money in an Empyreal vehicle and then force

6

PLAINTIFF'S REPLY TO FEDERAL DEFENDANTS' OPPOSITION TO RENEWED TRO

Empyreal to prove that it is state-legal medical cannabis proceeds, so long as there is a non-zero chance the money is unrelated to state-legal medical cannabis. *See id*. That makes the TRO obviously necessary, because the Federal Defendants believe that, under the circumstances described in this lawsuit, they are absolutely entitled to search and seize the contents of Empyreal's vehicles regardless of their source. Under the Rohrbacher-Farr Amendment, they are grossly mistaken.

### C.    Plaintiff is not seeking to enjoin future investigations.

As explained at the outset, Plaintiff's requested TRO does not seek to enjoin the Federal Defendants from conducting criminal investigations. It seeks to enjoin the Federal Defendants from conducting pretextual stops, searches, and seizures of Empyreal vehicles based on their transportation of state-legal marijuana proceeds. Such an injunction in no way ties the Federal Defendants' hands or prevents them from, for instance, conducting any necessary investigations to confirm that the various businesses Empyreal serves are compliant with all relevant state laws.

In arguing against this limited injunction, the Federal Defendants incorrectly claim that the Rohrabacher-Farr Amendment does not permit this Court to provide such relief. *See* Opp. 10–11. This is patently incorrect. The Federal Defendants' only support for this proposition comes from an acontextual case concerning the application of the Rohrabacher-Farr Amendment to a criminal judgment that was entered prior to the Amendment's passage, but which was subsequently appealed. *See generally United States v. Kleinman*, 880 F.3d 1020 (9th Cir. 2017). The Federal Defendants' cherry-picked quote does not in fact stand for the proposition that the Amendment cannot provide any relief absent a criminal charge; it merely provides parameters for those who are seeking to invoke the Amendment *because of* a criminal charge. *Id.* at 1027–29 (holding that remanding defendant's criminal case for an evidentiary hearing regarding compliance with state law was unnecessary because he was convicted of two charges involving conduct that violated state law, so defendant could not show the requisite compliance).

If there were any doubt that *Kleinman* did not foreclose Plaintiff's request for injunctive relief, the Ninth Circuit expressly rejected the Federal Defendants' argument two years later. *See Sierra Club v. Trump*, 929 F.3d 670, 695–96 (9th Cir. 2019). In *Sierra Club*, the court emphasized that it "did not in *McIntosh* treat the alleged constitutional violation [of violating the Spending Clause by ignoring the Rohrabacher-Farr Amendment] only as a *defense* for criminal defendants." *Id.* (internal quotation omitted). To the contrary, the *McIntosh* court held, and the *Sierra Club* court reaffirmed, that "'Appellants . . . can seek—and have sought—to enjoin [an agency] from *spending funds*' contrary to Congress's restrictions." *Id.* (quoting *McIntosh*, 833 F.3d at 1172) (alterations and emphasis in original). In other words, litigants can seek injunctive relief against *any* expenditure that violates the Rohrabacher-Farr Amendment. *See McIntosh*, 833 F.3d at 1173 (holding that individuals "may seek to enjoin the expenditure of those funds.").

To hold otherwise would sanction the DOJ's interference with state-legal medical cannabis laws for everything except criminal prosecutions. But that was not Congress's command. Instead, Congress prohibited "the use of *any* DOJ funds that prevent states with medical marijuana programs (including California) from implementing their state medical marijuana laws." *Kleinman*, 880 F.3d at 1027 (emphasis added). And because "Congress has so acted, 'it is for . . . the courts to enforce' its decisions," including through injunctive relief against the continued expenditure of funds. *Sierra Club*, 929 F.3d at 695–96 (quoting *McIntosh*, 833 F.3d at 1172).[2]

---

[2] Because the Federal Defendants' separation-of-powers argument relies on its faulty premise that the Rohrbacher-Farr Amendment does not provide Plaintiff with a remedy, Opp. 11, this argument fails for the same reasons. The Legislative Branch has expressly decided that the DOJ (Executive Branch) may not spend any funds to interfere with state medical-cannabis laws, and the Judicial Branch is required to enforce those commands. *Sierra Club*, 929 F.3d at 695–96.

### D. Plaintiff has not requested a TRO based on its Due Process Claim.

The Federal Defendants' final argument against Plaintiff's likelihood of success on the merits of its claims concerns whether their participation in equitable sharing violates the due process clause. *See* Opp. 12–13. However, Plaintiff did not raise a due process argument in support of its application for a TRO against the Federal Defendants. Plaintiff will litigate that claim later in the case; therefore, these arguments are irrelevant to whether the TRO should issue. The fact that Plaintiff is likely to succeed on its *ultra vires* claim against the Federal Defendants is sufficient to warrant the issuance of a TRO.

## III. Empyreal is Suffering and Will Continue to Suffer Irreparable Harm Absent a TRO.

Empyreal has shown that it is suffering and will continue to suffer irreparable harm absent a TRO. Contrary to the Federal Defendants' representations otherwise, Empyreal has done far more than speculate that it will suffer mere monetary damages. *Compare* Opp. 13–15, *with* Mem. 6–8, 23–24; Jan. 13 O'Gorman Decl. ¶ 49. For instance, Empyreal alleges that it has *already* suffered—and is continuing to suffer—reputational damage because of these unconstitutional stops, searches, and seizures, that it has lost clients, and that its competitors have capitalized on Defendants' conduct to poach Empyreal's current clients and dissuade future clients. *Id.*; Mem. 8. Competitors have even taken to social media to report Defendants' actions against Empyreal as a reason to switch providers. *See* Jan. 13 O'Gorman Decl., Ex. A (LinkedIn post by competitor stating, "Good work by the DEA and police on this one. . . ." and recommending its own services instead). The Ninth Circuit has held that merely the "*threatened* loss of prospective customers or good will" will constitute irreparable harm. *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 841 (9th Cir. 2001) (emphasis added). Likewise, a "loss of control over business reputation" is an irreparable injury warranting a TRO. *Adidas Am., Inc. v. Skechers USA, Inc.*,

890 F.3d 747, 756 (9th Cir. 2018). Plaintiff's well-supported allegations and specific evidence of threats to its customer relations more than satisfy this standard.

Economic harm is also not speculative when "it is sufficiently concrete and supported by the record." *California v. Azar*, 911 F.3d 558, 581 (9th Cir. 2018). Here, Empyreal has offered the sworn testimony of its CEO regarding the scope and severity of concrete economic harms it will incur if Defendants' unconstitutional conduct is not immediately enjoined, including threatening to shut down significant portions of Empyreal's business for good. Mem. 7, 24; Jan. 13 O'Gorman Decl. ¶ 49. This is not mere speculation; it is reality that if the Federal Defendants are not enjoined from targeting Empyreal's vehicles as they have over the last ten weeks, Empyreal will not be able to operate in San Bernardino County and will be limited in its ability to operate in California, which currently accounts for 20% of its business. *Id*. It is not speculation that Empyreal has already lost at least one client, been forced to stop operating in San Bernadino County, halted construction in San Bernardino County, been unable to fulfill new and existing contracts in Southern California, and had to stop driving through Kansas, at great expense, because of the Federal Defendants' actions to date. O'Gorman Jan. 13 Decl. ¶ 49. These are concrete harms to Empyreal's business, which cannot be easily calculated or remedied through monetary damages and can only be prevented by injunctive relief. It is well-established that this type of harm, resulting from the Federal Defendants' violation of the Constitution's Spending Clause, *see Sierra Club*, 929 F.3d at 676, constitutes an irreparable injury justifying a TRO. *Am. Trucking Assocs., Inc. v. City of Los Angeles*, 559 F.3d 1046, 1058 (9th Cir. 2009) (noting that constitutional violation coupled with resulting damages amounts to irreparable harm). Therefore, Plaintiff is entitled to injunctive relief.

### IV. The Equities and Public Interest Strongly Favor Issuing a TRO.

The Federal Defendants argue that the public interest is against granting a TRO because of its supposed ongoing criminal investigations. Opp. 16. First, the TRO requested here would not prevent the Federal Defendants from pursuing any criminal investigation. It would merely prevent them from conducting pretexual stops, searches, and seizures against Empyreal or seizing funds simply because they are the proceeds of state-legal cannabis businesses.[3] *See* Prop. Order 3–4 (ECF No. 36-5). Second, the government's ability to enforce criminal laws is always limited by legislative demands and constitutional constraints, including the structural limitations embodied in the separation of powers. By acting *ultra vires*, the Federal Defendants have acted not just beyond the limitations set forth by Congress, but also in violation of the Spending Clause. *See Sierra Club*, 929 F.3d at 676 (noting that a violations of a Congressional spending prohibitions also "violates the constitutional requirement that the Executive Branch not spend money absent an appropriation from Congress.") Because the public interest lies in upholding what the legislature sought to protect, *see Weinberger v. Romero-Barcelo*, 456 U.S. 305, 320 (1982), and in respecting the Constitution's separation of powers, which entrusts the spending power solely to Congress, the balance of equities favors the Plaintiff.

### V. Conclusion.

The Federal Defendants have made no effort to hide their participation in the campaign to stop, search, and seize Empyreal's vehicles and the contents within them, openly violating Congress's prohibition on spending any funds that would prevent states from implementing their own medical-cannabis laws. And they have

---

[3] In fact, the Federal Defendants have not offered any explanation for why seizing funds, which are then deposited into a bank in exchange for a check issued to one of the Federal Defendants, is necessary to effectively pursue any investigation. There is no additional evidentiary value from funds that are seized and placed in government bank accounts.

given every indication that they plan to continue this campaign absent Court intervention. This Court should, therefore, issue a temporary restraining order enjoining Defendants' unlawful and unconstitutional stops, searches, and seizures of Empyreal's vehicles, cash, and other property, and issue an order for Defendants to show cause why a preliminary injunction should not issue.

Dated: January 27, 2022　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　/s/   David C. Bass

**INSTITUTE FOR JUSTICE**　　　　　　**KOELLER, NEBEKER, CARLSON &**
Dan Alban (admitted *pro hac vice*)　　**HALUCK LLP**
dalban@ij.org　　　　　　　　　　　　David C. Bass (Cal. Bar No. 296380)
Kirby Thomas West (admitted *pro hac vice*)　david.bass@knchlaw.com
kwest@ij.org　　　　　　　　　　　　Jerome Satran (Cal Bar. No. 188286)
901 North Glebe Road, Suite 900　　　jerry.satran@knchlaw.com
Arlington, VA 22203　　　　　　　　1478 Stone Point Drive, Suite 435
(703) 682-9320　　　　　　　　　　　Roseville, CA 95661
(703) 682-9321 (fax)　　　　　　　　(916) 724-5700
　　　　　　　　　　　　　　　　　　(916) 788-2850 (fax)

*Counsel for Plaintiff*