**KOELLER, NEBEKER, CARLSON & HALUCK LLP**
David C. Bass (Cal. Bar No. 296380)
david.bass@knchlaw.com
Jerome Satran (Cal Bar. No. 188286)
jerry.satran@knchlaw.com
1478 Stone Point Drive, Suite 435
Roseville, CA 95661
(916) 724-5700
(916) 788-2850 (fax)

**INSTITUTE FOR JUSTICE**
Dan Alban (admitted *pro hac vice*)
dalban@ij.org
Kirby Thomas West (admitted *pro hac vice*)
kwest@ij.org
901 North Glebe Road, Suite 900
Arlington, VA 22203
(703) 682-9320
(703) 682-9321 (fax)

*Counsel for Plaintiff*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF CALIFORNIA
# EASTERN DIVISION

| | |
|---|---|
| EMPYREAL ENTERPRISES, LLC,<br><br>              Plaintiff,<br><br>     v.<br><br>UNITED STATES OF AMERICA, et al.,<br><br>              Defendants. | Case No. 5:22-cv-00094-JWH-SHKx<br><br>**PLAINTIFF'S REPLY TO DEFENDANT DICUS'S OPPOSITION [ECF 46] TO PLAINTIFF'S RENEWED EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE [ECF 36]**<br><br>Honorable John W. Holcomb<br>Complaint Filed 1/14/22 |

# TABLE OF CONTENTS

Page

I. Introduction ..................................................................................................... 1

II. Argument ......................................................................................................... 1

    A. Because the *Rooker–Feldman* doctrine does not apply to Plaintiff's claims, the Sheriff has no argument against Empyreal's likelihood of success on the merits ........................................................................... 1

    B. Sheriff Dicus mischaracterizes the irreparable harm standard, and Empyreal's undisputed, sworn testimony clearly satisfies that legal standard ............................................................................................... 4

    C. Sheriff Dicus unsuccessfully tries to manufacture a dispute over the lawfulness of Empyreal's and its clients' business operations, and he misunderstands the relief Empyreal seeks, which would not enjoin lawful traffic stops or otherwise enjoin the "enforcement of a state criminal law." ..................................................................................... 8

III. Conclusion ..................................................................................................... 11

# TABLE OF AUTHORITIES

**Cases**

*Adidas Amercia, Inc. v. Skechers USA, Inc.*, 890 F.3d 747 (9th Cir. 2018)..............6

*American Trucking Associates, Inc. v. City of Los Angeles*,
    559 F.3d 1046 (9th Cir. 2009)......................................................................6, 7

*Cooper v. Ramos*, 704 F.3d 772 (9th Cir. 2012).........................................................4

*Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280 (2005)............3, 4

*Garcia v. Google, Inc.*, 786 F.3d 733 (9th Cir. 2015) .................................................1

*Independant Towers of Washington v. Washington*,
    350 F.3d 925 (9th Cir. 2003).............................................................................2

*Johnson v. Macy*, 145 F. Supp. 3d 907 (C.D. Cal. 2015) ...........................................4

*Kildare v. Saenz*, 325 F.3d 1078 (9th Cir. 2003).......................................................6

*Kougasian v. TMSL, Inc.*, 359 F.3d 1136 (9th Cir. 2004) .........................................3

*Morales v. Trans World Airlines, Inc.*, 504 U.S. 374 (1992) ....................................7

*Mothershed v. Justices of the Supreme Court*, 410 F.3d 602 (9th Cir. 2005) ...........4

*National Organization for Reform of Marijuana Laws (NORML) v. Mullen*,
    608 F. Supp. 945 (N.D. Cal. 1985)..................................................................11

*Noel v. Hall*, 341 F.3d 1148 (9th Cir. 2003)..............................................................2

*Robinson v. Ayala*, 2020 WL 8474754 (C.D. Cal. Dec. 21, 2020)...........................2

*Scannell v. Washington State Bar Ass'n*,
    2014 WL 12907843 (W.D. Wash. Mar. 10, 2014)..............................................3

*Stauber v. City of New York*, 2004 WL 1683166 (S.D.N.Y. July 27, 2004)...........11

*Stuhlburg International Sales Co. v. John D. Brush & Co.*,
    240 F.3d 832 (9th Cir. 2001).............................................................................7

*VanderKodde v. Mary Jane M. Elliott, P.C.*, 951 F.3d 397 (6th Cir. 2020) ............4

## I. Introduction

Sheriff Dicus's opposition (ECF 46) to Empyreal's renewed application for a temporary restraining order and order to show cause (ECF 36) and to Empyreal's accompanying proposed order (ECF 36-5) casts no doubt on Empyreal's factual testimony or legal arguments. The Sheriff's undeveloped *Rooker–Feldman* argument is foreclosed by unambiguous precedent. His umbrage with Empyreal's irreparable harm argument ignores both Empyreal's unrebutted, sworn testimony and the blackletter legal standard. His efforts to manufacture a dispute about the lawfulness of Empyreal's and its clients' business operations cannot contend with the actual record. And his assertion that Empyreal seeks immunity from law enforcement suffers from an apparent failure to read Empyreal's proposed order.

## II. Argument

### A. Because the Rooker-Feldman doctrine does not apply to Plaintiff's claims, the Sheriff has no argument against Empyreal's likelihood of success on the merits

In his opposition, Sheriff Dicus makes no substantive arguments about the "most important factor" in deciding whether to grant an injunction: likelihood of success on the merits. *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015). The Sheriff does not grapple with Empyreal's claims and its supporting arguments that he is violating (1) California law's protections of the lawful cannabis industry, (2) the Fourth Amendment's protections against unlawful and unreasonable seizures and searches, and (3) the Fourteenth Amendment's protections against profit-incentivized government conduct. *See* Compl., ECF 1, Counts I, III, V; Renewed Application for TRO, ECF 36, at 14–23. That failure alone should doom the Sheriff's opposition to Empyreal's unrebutted claims and arguments.

The closest the Sheriff comes to an argument regarding that most important injunction factor is a perplexing assertion that the *Rooker–Feldman* doctrine deprives this Court of jurisdiction over "at least some of the issues raised in"

Empyreal's TRO application. *See* Sheriff's Opp., ECF 46, at 7. But the Sheriff's argument cannot be squared with the Ninth Circuit's straightforward formulation of when the *Rooker–Feldman* doctrine applies and when it does not:

> If a federal plaintiff asserts as a legal wrong an allegedly erroneous decision by a state court, and seeks relief from a state court judgment based on that decision, *Rooker–Feldman* bars subject matter jurisdiction in federal district court. If, on the other hand, a federal plaintiff asserts as a legal wrong an allegedly illegal act or omission by an adverse party, *Rooker–Feldman* does not bar jurisdiction.

*Noel v. Hall*, 341 F.3d 1148, 1164 (9th Cir. 2003). In other words, *Rooker–Feldman* is about federal jurisdiction over *legal claims* that amount to appeals of state court *judgments*. It is not a way to get out of an adequately alleged federal claim just because there may be an overlap of *factual issues* assessed in a state court proceeding.

    Not only are there no state court judgments at issue here, but "[n]otably absent" from the Sheriff's cryptic assertion "is any explanation" of which of Empyreal's three legal claims against him might actually be barred by the *Rooker-Feldman* doctrine. *Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003). Neither Empyreal nor this Court should be forced to guess at that, "manufacture arguments" for the Sheriff, *id.*, or "plumb [his brief] for arguments not made," *Robinson v. Ayala*, 2020 WL 8474754, at *3 (C.D. Cal. Dec. 21, 2020).

    The fact that a state court once issued a search warrant against Empyreal based on facts that overlap with some of the facts relevant to Empyreal's legal claims here, *see* Sheriff's Opp., ECF 46, at 9, does not mean that any of Empyreal's three claims against the Sheriff is an actual or de facto appeal of, or is inextricably intertwined with any (nonexistent) appeal of, a (nonexistent) state court judgment. That is because Empyreal is not "complaining of legal injury [1] *caused by a state court judgment* [2] *because of a legal error committed by the state court*." *Noel v. Hall*, 341 F.3d at 1164 (emphasis added).

Even assuming that the state court's search warrant qualified as a "judgment," nowhere in its complaint or TRO application does Empyreal seek relief from that warrant. There is no request to quash the warrant, suppress evidence obtained as a result of the warrant, or recover any property seized as a result of the warrant. Rather, all of Empyreal's claims and arguments assert legal wrongs by the Sheriff, not by a state court judge. That takes this case out of "the narrow ground occupied by *Rooker–Feldman*," which "is confined to . . . cases brought by state-court losers complaining of injuries *caused by state-court judgments* rendered before the district court proceedings commenced and inviting district court review and rejection *of those judgments*." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005) (emphases added).

Therefore, the Ninth Circuit has unsurprisingly rejected the notion that the "'inextricably intertwined' test means that a federal plaintiff cannot raise issues that are 'inextricably intertwined' with issues raised in simultaneous ongoing state court litigation," because that would improperly interpret *Rooker–Feldman* to "prevent the parallel state and federal litigation that is one of the hallmarks of our federal system." *Kougasian v. TMSL, Inc.*, 359 F.3d 1136, 1143 (9th Cir. 2004) (collecting cases). So even if the Sheriff's argument is read as an attack on Empyreal's Fourth Amendment claim—on the theory that it raises the same factual "issues" of probable cause as were present in the state court's decision to issue a search warrant—that overlap of "issues" does not trigger *Rooker–Feldman* because Empyreal is not asking this Court to "reverse unfavorable state-court judgments." *Exxon Mobil Corp.*, 544 U.S. at 283.

These obvious conclusions are reinforced by the fact that all of Empyreal's claims and requests for relief are prospective, not retrospective. Under *Rooker–Feldman*, "[m]any courts have . . . declined jurisdiction over cases where the plaintiff sought a general injunction barring past judgments, but allowed jurisdiction where the plaintiff sought prospective relief." *Scannell v. Wash. State Bar Ass'n*, 2014 WL 12907843, at *3 (W.D. Wash. Mar. 10, 2014) (collecting cases). That is because

3
PLAINTIFF'S REPLY TO DEFENDANT DICUS'S OPPOSITION TO PLAINTIFF'S RENEWED TRO

"[t]o determine whether an action functions as a de facto appeal [of a state court judgment]," a court "pay[s] close attention to the relief sought by the federal-court plaintiff." *Id.* (quoting *Cooper v. Ramos*, 704 F.3d 772, 777–78 (9th Cir. 2012)); *see also Mothershed v. Justs. of Sup. Ct.*, 410 F.3d 602 (9th Cir. 2005) (distinguishing between (1) claim against adverse party's policy, which is not barred, and (2) review of state court's particular application of adverse party's policy, which may be barred). Empyreal is not seeking to undo or reverse anything, let alone a state court judgment; it is only asking this Court to enjoin the Sheriff's—not any state court's—future conduct.

In short, applying *Rooker–Feldman* here would "extend [the doctrine] far beyond the contours of the *Rooker* and *Feldman* cases," in violation of the Supreme Court's admonition against "overriding Congress'[s] conferral of federal-court jurisdiction concurrent with jurisdiction exercised by state courts." *Exxon Mobil Corp.*, 544 U.S. at 283. That admonition is why, "[a]bsent a claim seeking review of a final state court judgment, a federal court tempted to dismiss a case under *Rooker–Feldman* should do one thing: Stop." *VanderKodde v. Mary Jane M. Elliott, P.C.*, 951 F.3d 397, 409 (6th Cir. 2020) (Sutton, J., concurring).

> **B.  Sheriff Dicus mischaracterizes the irreparable harm standard, and Empyreal's undisputed, sworn testimony clearly satisfies that legal standard.**

In arguing that Empyreal does not satisfy the irreparable harm element for relief, Sheriff Dicus does not cite a single case defining what constitutes irreparable harm. He asserts, without authority, that irreparable harm "is an element of a motion heard on the standard timeframe," Sheriff's Opp., ECF 46, at 7, apparently implying that a different (unstated) standard applies to a TRO request. Of course, that implication is wrong: "The standards for a [TRO] and a preliminary injunction are the same." *Johnson v. Macy*, 145 F. Supp. 3d 907, 913 (C.D. Cal. 2015) (collecting cases). Turning to the actual irreparable harm inquiry, the Sheriff simply asserts that

Empyreal's undisputed, sworn testimony is speculative and that its harms are self-inflicted. Sheriff's Opp., ECF 46, at 7. But to make that argument, he ignores what Empyreal's testimony actually is and whether it comports with the Ninth Circuit's well-established irreparable harm standards.

First, Empyreal's testimony is not speculative. As explained in an unrebutted, sworn declaration by CEO Deirdra O'Gorman, the company has *already* suffered and continues to suffer the following economic hardships and reputational harms:

- Each seizure of Empyreal's cash has rendered it unable to perform a service for which it was contracted, damaging Empyreal's business reputation, client retention, and client recruitment.

- The Sheriff's repeated stops, searches, and seizures of Empyreal's personnel and property has caused Empyreal reputational harm and makes its existing clients less likely to engage in business with Empyreal in the future.

- Being targeted by the Sheriff for repeated stops, searches, and seizures threatens the viability of Empyreal's entire cash-in-transit business model in San Bernardino County.

- Because of the Sheriff's repeated stops, searches, and seizures, Empyreal has been forced to suspend its business operations in San Bernardino County and reroute other Southern California routes to avoid the County, at substantial but unquantifiable financial loss.

- Because of the Sheriff's repeated stops, searches, and seizures, Empyreal has been forced to suspend construction and operations from its vault and currency processing facility in the County, yet Empyreal is incurring nearly $21,000 per month in rent and utilities at the facility.

- Because of the Sheriff's repeated stops, searches, and seizures, Empyreal cannot use the San Bernardino currency processing facility to serve Southern California, a key market for its business, and has had to reroute at considerable expense.

- To protect its business reputation, Empyreal reimbursed its clients the more than $1 million seized by the Sheriff, effectively indemnifying its clients out of its own revenue.

- Empyreal has been forced to expend unrecoverable revenue and resources contesting the attempted civil forfeitures of the cash seized by the Sheriff and repairing the damage done to its vehicle and security features during the Sheriff's November 16, 2021 seizure.

- The Sheriff's practice of disabling the cameras on Empyreal's vehicles during his stops, searches, and seizures of Empyreal's personnel and property has interfered with Empyreal's property and is inhibiting Empyreal's ability to gather facts about the incidents for purposes of defending against the civil forfeiture of its cash and vindicating its statutory and constitutional rights.

ECF 36-1 ("Jan. 13 O'Gorman Decl."), ¶ 49. These concluded and ongoing harms clearly constitute "[e]conomic hardship," "loss of control over business reputation," constitutional violations and associated injuries, and the forced cessation of lawful business operations—each of which alone suffices to establish irreparable harm. *Kildare v. Saenz*, 325 F.3d 1078, 1083 (9th Cir. 2003); *Adidas Am., Inc. v. Skechers USA, Inc.*, 890 F.3d 747, 756 (9th Cir. 2018); *Am. Trucking Assocs., Inc. v. City of Los Angeles*, 559 F.3d 1046, 1058 (9th Cir. 2009).

And yet, there is even more, in the form of reasonably expected future harms, including: lost business opportunities, lost potential clients, and lost investors or business partners, as well as millions of dollars in lost projected revenue if Empyreal needs to continue curtailing or suspending its Southern California business operations. Jan. 13 O'Gorman Decl. ¶ 49. Even though these are anticipated harms, they too are not, as the Sheriff baldly asserts, speculative. As Empyreal CEO Deirdra O'Gorman explains, they are based not only on her decades of experience in the financial industry and as Empyreal's CEO, but also on having experienced the reputational harms and lost business that have already resulted from the May 18, 2021 Kansas seizure of Empyreal's cash and O'Gorman's takeaways from communications with clients, potential clients, and potential investors about the effects of the ongoing stops, searches, and seizures of Empyreal's personnel and

property. *Id.* The law is clear: Harm need not have already materialized to meet the irreparable harm legal standard; "*threatened* loss of prospective customers or goodwill" of the sort detailed and reasonably substantiated by O'Gorman suffices. *Stuhlburg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 841 (9th Cir. 2001) (emphasis added).

Finally, none of these harms—those already suffered or those anticipated—are self-inflicted or by choice, as the Sheriff strangely asserts. Empyreal has fully demonstrated that it cannot safely operate in San Bernardino County without being targeted for stops, searches and seizures by the Sheriff. Empyreal's "choice" to suspend business operations in the County is entirely a result of the Sheriff's actions in targeting Empyreal's vehicles. The fact that Empyreal has suspended business operations to avoid harms repeatedly imposed by the Sheriff does not make the harm self-inflicted. O'Gorman repeatedly explains that every relevant decision to reroute vehicles, suspend operations, or alter business practices is "because of" the Sheriff's conduct and the industry's reactions to that conduct. Jan. 13 O'Gorman Decl. ¶ 49. Even if the Court deems any one or two of Empyreal's decisions overly cautious, O'Gorman has detailed more than enough economic and reputational harms caused by the Sheriff's conduct over which the company has had no control, including his constitutional violations. *Id.*; *see* Renewed Application for TRO, ECF 36, at 14–23 (constitutional arguments under Fourth and Fourteenth Amendments). In reality, only a Hobson's choice is available to Empyreal: stop operating in San Bernardino County or be subject to more stops, searches, and seizures of its vehicles and their contents. That is plainly irreparable harm. *See, e.g.*, *Am. Trucking Assocs., Inc.*, 559 F.3d at 1057–58 (citing *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374 (1992)) (finding likelihood of irreparable harm where a party is put to Hobson's choice of submission to unconstitutional exercise of governmental authority or facing serious financial penalties).

      **C.**     **Sheriff Dicus unsuccessfully tries to manufacture a dispute over the lawfulness of Empyreal's and its clients' business operations, and he misunderstands the relief Empyreal seeks, which would not enjoin lawful traffic stops or otherwise enjoin the "enforcement of a state criminal law."**

      The Sheriff's final arguments are (1) that Empyreal cannot know whether it or its clients are actually operating in compliance with state cannabis laws, and (2) that Empyreal is asking the Court to enjoin the Sheriff from enforcing traffic laws—indeed, that Empyreal is asking the Court to enjoin the Sheriff from enforcing just about any state laws. *See* Sheriff's Opp., ECF 46, at 10–11. But these arguments fail to contend with the record or the text of the proposed TRO.

      The Sheriff attempts to manufacture a dispute as to Empyreal's and its clients' compliance with state cannabis laws based on (1) the possibility that a drug dog K9 Eros alerted on Empyreal's vehicle and the cash within it; (2) one of his sergeant's vague and unsurprising explanations that the Sheriff has "several active investigations into" narcotics violations and that the currency seized from Empyreal "may be" evidence in those investigations; and (3) the possibility that his deputy did not actually admit that the ongoing stops, seizures, and searches of Empyreal's personnel and property are "political." *Id.*

      Those points do not undermine any of Empyreal's legal claims.

      First, K9 Eros's alert to Empyreal's vehicle and the cash in it tells us nothing about Empyreal's or its clients' compliance with state cannabis laws. Everyone agrees that at least some of the cash Empyreal transports is associated with the cannabis industry. And, unsurprisingly, the Sheriff does not claim that K9 Eros is somehow able to differentiate between the scent of state-law-compliant cannabis proceeds and non-compliant cannabis proceeds.

      Second, the fact that the Sheriff has active investigations into potential narcotics violations tells us nothing about whether any of those investigations involve Empyreal or its clients generally, or that any of the specific stops and

seizures the Sheriff has so far conducted arose out of those investigations. The supporting declaration by Sergeant Naoum fails to add any weight to these claims by stating that the seized currency "may be evidence in those investigations."[1] ECF 46-1 at 5. Ambiguous hedging of this nature offers zero evidentiary value, because it also means that the seized currency may *not* be evidence in those investigations. To offer such equivocation in the face of a demand for evidence supporting the legitimacy of these ongoing stops, searches, and seizures—which have brought severe disruptions Empyreal's business throughout Southern California—simply serves to demonstrate the absence of any legal basis for the Sheriff's actions. Of course, if the Sheriff has individualized and articulable reasonable suspicion or probable cause of criminal activity by specific cannabis businesses, he can always initiate or pursue criminal investigations into the compliance of those businesses with state law. The proposed TRO would do nothing to prevent that. But there must be individualized probable cause of criminal activity before property may be seized. The Sheriff cannot simply seize proceeds from any state-licensed cannabis business because someday it "may be" used as evidence in unspecified ongoing investigations that may not actually involve any of those businesses.

And, contrary to the Sheriff's sweeping claims about drug investigations, the purported reason for each stop here was a traffic violation. Thus, the Sheriff's vague, unsurprising assertion about drug investigations, which amounts to nothing more than a confirmation that the Sheriff's office does police work, certainly does not rebut Empyreal's specific, sworn testimony, backed up by documentary evidence, that Empyreal and its clients are in full compliance with cannabis and financial laws and regulations and are in good standing with the State of California. *See, e.g.*, Jan. 13 O'Gorman Decl., ¶¶ 10–11, 13, 16–17, 25, 31, 33–34; January 27, 2022 Deirdra O'Gorman Supplemental Declaration ("O'Gorman Suppl. Decl."), ¶¶ 10–15, Exs.

---

[1] Even if it were true that the currency was evidence in an investigation, it offers no additional evidentiary value by being deposited in a government bank account.

A–B; *see also* Compl. ¶¶ 13, 15, 51–52, 56, 67–69, 72, 76, 93, 112, 141, 144, 207–09, 292, 344–45, 380–82.

Indeed, even when the Sheriff's deputy obtained a warrant for the November 16, 2021 search and seizure of Empyreal's property, he did so on the basis of: mistaken, unsubstantiated assumptions about "coin-base" cryptocurrency, *see* January 27, 2022 David Bass Supplemental Declaration ("Bass Suppl. Decl."), Ex. A; *id.* ¶¶ 22–27; Eric Picardal Declaration ¶¶ 13–14; Michael Jerome Declaration ¶¶ 14–15; a mistaken, unsubstantiated, and unreasonable belief that Empyreal needed to be registered as a cannabis business to transport its cannabis clients' cash proceeds, *see* Bass Suppl. Decl. ¶ 28; and a mistaken, unsubstantiated, and unreasonable belief that "some of the companies having their currency transported were also not listed as authorized marijuana/cannabis businesses through the State of California." *Compare* Bass Suppl. Decl., Ex. A at 4, *with* Jan. 13 O'Gorman Decl. ¶¶ 10–11, 13, 16–17, 25, 31, 33–34; O'Gorman Suppl. Decl. ¶¶ 10–15, Exs. A–B.

Third, the Sheriff has not produced the recording that purports to contradict Empyreal's assertion that the Sheriff's deputy admitted to an Empyreal driver that the ongoing stops, seizures, and searches of Empyreal's personnel and property are "political." But even if the Sheriff is right that the recording not only says what the Sheriff claims it does but *also precludes the possibility* of the deputy making the "political" statement while not being recorded, such a gap in the evidence simply has no legal bearing on Empyreal's statutory or constitutional claims, its request for preliminary relief, or the question of its or its clients' compliance with state cannabis laws.

In short, none of the Sheriff's purported "questions of fact," individually or together, undermine Empyreal's sworn testimony and documentary evidence about the lawfulness of its and its clients' business operations or the statutory and constitutional arguments in Empyreal's opening brief.

      Similarly, Empyreal's opening arguments regarding the public interest are not undermined by the Sheriff's sole rebuttal to those arguments—i.e., his inexplicable assertion that the injunction Empyreal seeks would keep the Sheriff and his deputies from pulling Empyreal's drivers over for traffic violations or any other state law violations. *See* Sheriff's Opp., ECF 46, at 11. Empyreal's proposed order belies that strange assertion by unambiguously asking that the Court only enjoin the Sheriff and his deputies from "[s]topping, detaining, or seizing Plaintiff's personnel or vehicles *absent articulable, particularized reasonable suspicion or probable cause of a traffic violation or other criminal conduct*." Proposed Order, ECF 36-5, at 3 (emphasis added). This and the accompanying requests in Empyreal's proposed order, *see id.* at 3–4, constitute limited and properly tailored injunctions that protect Empyreal from unlawful and unconstitutional conduct while respecting proper law-enforcement needs. *Cf., e.g., Nat'l Org. for Reform of Marijuana L. (NORML) v. Mullen*, 608 F. Supp. 945, 965 (N.D. Cal. 1985) (enjoining law enforcement from conducting warrantless searches, seizures, and helicopter surveillance of homes and curtilages of persons living near rural marijuana "gardens"); *Stauber v. City of New York*, 2004 WL 1683166, at *1 (S.D.N.Y. July 27, 2004) (enjoining NYPD's bag search policy).

      In short, in addition to Empyreal's opening public-interest arguments, the Court should make clear that Empyreal's requested preliminary relief would simply preserve the status quo of Empyreal conducting its cash-in-transit business without interference absent articulable, demonstrable evidence of criminality.

### III.   Conclusion

      The Court should grant Empyreal's renewed application for a temporary restraining order and order to show cause regarding a preliminary injunction and enter Empyreal's proposed order to that effect.

| | | |
|---|---|---|
| 1 | Dated: January 27, 2022 | Respectfully submitted, |
| 2 | | /s/   David C. Bass |
| 3 | **INSTITUTE FOR JUSTICE** | **KOELLER, NEBEKER, CARLSON &** |
| | Dan Alban (admitted *pro hac vice*) | **HALUCK LLP** |
| 4 | dalban@ij.org | David C. Bass (Cal. Bar No. 296380) |
| | Kirby Thomas West (admitted *pro hac* | david.bass@knchlaw.com |
| 5 | *vice*) | Jerome Satran (Cal Bar. No. 188286) |
| 6 | kwest@ij.org | jerry.satran@knchlaw.com |
| | 901 North Glebe Road, Suite 900 | 1478 Stone Point Drive, Suite 435 |
| 7 | Arlington, VA 22203 | Roseville, CA 95661 |
| | (703) 682-9320 | (916) 724-5700 |
| 8 | (703) 682-9321 (fax) | (916) 788-2850 (fax) |

*Counsel for Plaintiff*

PLAINTIFF'S REPLY TO DEFENDANT DICUS'S OPPOSITION TO PLAINTIFF'S RENEWED TRO