**KOELLER, NEBEKER, CARLSON & HALUCK LLP**
David C. Bass (Cal. Bar No. 296380)
david.bass@knchlaw.com
Jerome Satran (Cal Bar. No. 188286)
jerry.satran@knchlaw.com
1478 Stone Point Drive, Suite 435
Roseville, CA 95661
(916) 724-5700
(916) 788-2850 (fax)

**INSTITUTE FOR JUSTICE**
Dan Alban (admitted *pro hac vice*)
dalban@ij.org
Kirby Thomas West (admitted *pro hac vice*)
kwest@ij.org
901 North Glebe Road, Suite 900
Arlington, VA 22203
(703) 682-9320
(703) 682-9321 (fax)

*Counsel for Plaintiff*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA
### EASTERN DIVISION

| | |
|---|---|
| EMPYREAL ENTERPRISES, LLC, <br><br> Plaintiff, <br><br> v. <br><br> THE UNITED STATES OF AMERICA, et al., <br><br> Defendants. | Case No. 5:22-cv-00094-JWH-SHKx <br><br> **DECLARATION OF MICHAEL JEROME IN SUPPORT OF PLAINTIFF'S RENEWED *EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE RE: PRELIMINARY INJUNCTION** <br><br> Honorable John W. Holcomb <br> Complaint Filed: 1/14/22 |

I, Michael Jerome, submit the following supplemental declaration in support of Plaintiff's Application to File Under Seal and Renewed *Ex Parte* Application for Temporary Restraining Order and Order to Show Cause.

1. I am a citizen of the United States of America and a resident of the state of Colorado. I am over eighteen years of age and fully competent to make this declaration.

2. I am the Senior Vice President of Operations at Empyreal Enterprises, LLC d/b/a Empyreal Logistics ("Empyreal"). I have been employed by Empyreal since mid-2018, originally serving as Vice President of Operations.

3. Prior to joining Empyreal, I was employed in an upper-level management position by another cash-in-transit, cash processing, and security guard organization for approximately four years.

4. Before that, I was employed as a POST-certified, level-one peace officer / deputy sheriff in Colorado for 12 years. During that time, I worked in the sheriff's office patrol and detentions divisions, performing a number of duties including: crime prevention and criminal activity investigation and mitigation; working with businesses and residential groups addressing criminal trends and quality-of-life issues in their areas; creating and communicating sheriff's office enforcement goals and efforts to county residents and businesses; investigating criminal activity per the Colorado Revised Statutes Title 18; managing and supervising detentions facility and work-release inmates; referring gang-related

communications and activities to the sheriff's office gang intelligence unit; and other daily duties as assigned.

5. Prior to that, I was in the Army National Guard in Washington State for approximately two years.

6. On November 16, 2021, I received a phone call from Eric Picardal, then a transport supervisor for Empyreal. Eric informed me that an Empyreal armored vehicle was stopped in San Bernardino County by an officer with the San Bernardino Sheriff's Office, Deputy Franco. Eric informed me that Deputy Franco was suspicious about Empyreal's cash-in-transit activity and was planning on seizing the currency inside the vehicle.

7. I contacted Deputy Franco, who informed me of his intentions to seize funds that were inside the Empyreal vehicle because he suspected that the funds were connected to potentially illegal cannabis-related businesses.

8. I explained that Empyreal operates as a traditional cash-in-transit company and that Empyreal works with licensed financial institutions (banks and credit unions) to provide currency transportation services to their customers. I explained that Empyreal's vehicles pick up sealed bags of currency and coin from retail locations in Southern California and return the currency to Empyreal's branch location. Cash processing personnel in Empyreal's branch location then open the sealed bags of currency, count and record the amount of currency in each bag, and enter that information into vault management software. Empyreal generates daily

reports for financial institutions, enabling those institutions to credit and debit their client accounts based on deposits verified and change orders fulfilled by Empyreal cash processing personnel.

9. Deputy Franco asked why we transported the currency out of California, claiming that doing so was preventing California from collecting tax revenue on the currency transported out of California.

10. I explained to Deputy Franco that after Empyreal cash processing personnel count and validate deposits from financial institution retail clients, that currency is strapped, bundled, and delivered back into the banking system in Los Angeles, CA. I explained to Deputy Franco that this process ensures that California tax revenue is still collected.

11. I further explained that Empyreal is transparent about its cash-in-transit services with banks and credit unions and fully reports all currency transported/processed to those financial institutions, in compliance with all laws. State-legal cannabis businesses are thus subject to tax compliance and auditing based on the currency Empyreal processes and reports to financial institutions.

12. Deputy Franco asked what kind of clients we serviced. I told him that Empyreal transports currency only for retail business with legitimate accounts at banks and credit unions; some of our clients include financial branches, convenience stores, coffee shops, etc., while other clients are involved with the state-legal cannabis industry. I explained that Empyreal only provides cash-in-transit services

for state-legal cannabis businesses that are properly registered with the state and have accounts with banks and/or credit unions that have been subject to financial instution compliance/auditing procedures.

13. I told Deputy Franco that Empyreal never transports any cannabis products; Empyreal only transports currency and coin, as other cash-in-transit companies do.

14. Deputy Franco claimed that Eric Picardal told him that Empyreal converts cash deposits into cryptocurrency, or "coin-base". I was confused by this assertion; I told Deputy Franco that Empyreal does not, in any way, convert cash or coin deposits into cryptocurrency. All cash and coin collected by Empyreal is processed and reported to financial institutions as their original cash and coin amount.

15. I did explain that one of Empyreal's services to its clients is to provide change orders. Since cash-intensive retail clients are dependent on having small bills (cash) and coin on hand to provide as change to their customers, Empyreal fulfills change orders for its cash-in-transit clients in the form of bills (primarily $1s, $5s, and $10s) and rolled coin (pennies, nickels, dimes, and quarters).  Most of the time, these change orders placed by Empyreal's cash-in-transit clients are reported by Empyreal to their financial institutions and debited from their bank accounts. Sometimes, Empyreal's clients will provide currency (larger bills) in exchange for the smaller bills and rolled coin; this is referred to as a "change exchange" service

by Empyreal. The larger bills provided by Empyreal's cash-in-transit clients are still processed by Empyreal's branch cash-processing personnel as deposits and reported to their financial institutions.

16. Deputy Franco seemed unmoved by my explanation and reasserted his belief that the currency inside the cash-in-transit vehicle was collected from illegal cannabis operations. I explained again that Empyreal operates as a legitimate cash-in-transit company providing services only to licensed and state-legal businesses, with full reporting of cash movement, processing and change order fulfillment to banks and credit unions. Deputy Franco said he was not going to "litigate this on the side of the road," and he said the Sheriff's Department was going to seize the funds inside the vehicle.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 27th day of January, 2022, in Englewood, Colorado.

/s/ Michael Jerome