# UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| EMPYREAL ENTERPRISES, LLC, d/b/a Empyreal Logistics,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA; MERRICK GARLAND, Attorney General, in his official capacity; CHRISTOPHER A. WRAY, Director of the Federal Bureau of Investigation, in his official capacity; KRISTI KOONS JOHNSON, Assistant Director of the Federal Bureau of Investigation, in her official capacity; DRUG ENFORCEMENT AGENCY; ANNE MILGRAM, Administrator of the Drug Enforcement Agency in her official capacity; SHANNON D. DICUS, San Bernardino County Sheriff-Coroner, in his official capacity; U.S. DEPARTMENT OF JUSTICE; and FEDERAL BUREAU OF INVESTIGATION,<br><br>Defendants. | Case No. 5:22-cv-00094-JWH-SHKx<br><br>**ORDER DENYING PLAINTIFF'S RENEWED *EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING ORDER [ECF No. 36]** |

Plaintiff Empyreal Enterprises, LLC d/b/a Empyreal Logistics is a cash-in-transit (armored car) business. Empyreal's customers include participants in the state-legal cannabis industry. Empyreal accuses Defendants—state and local law enforcement officials and agencies—of conspiring to stop its vehicles and to seize the currency within in an unconstitutional and otherwise illegal manner. The Court does not now address whether Empyreal's rights were violated, nor whether Defendants violated any laws. Instead, the Court rules on whether Empyreal has met the high burden for the issuance of an extraordinary remedy: a Temporary Restraining Order ("TRO"). Empyreal has not met that burden.

Before the Court is Empyreal's Renewed Application for a Temporary Restraining Order and Order to Show Cause ("OSC").[1] The Court finds this matter appropriate for resolution without a hearing. *See* Fed. R. Civ. P. 78; L.R. 7-15. After considering the papers filed in support and in opposition,[2] the Court orders that the Motion is **DENIED**, as set forth herein.

---

[1] Pl.'s Renewed Appl. for TRO and OSC (the "Renewed Application") [ECF No. 36].

[2] The Court considered the following papers: (1) Compl. (the "Complaint") [ECF No. 1]; (2) the Renewed Application (including its attachments); (3) Federal Defendants' Opp'n to the Renewed Application (the "Federal Opposition") (including its attachments) [ECF No. 45]; (4) Sheriff's Opp'n to the Renewed Application (the "Sheriff's Opposition") (including its attachments) [ECF No. 46]; (5) Pl.'s Reply to Federal Opposition (the "Federal Reply") [ECF No. 51]; and (6) Pl.'s Reply to Sheriff's Opposition [ECF No. 52]. The Court received, but did not consider the following papers for reasons discussed below: (1) Pl.'s Appl. for Leave to File Under Seal (the "Application for Leave") [ECF No. 49]; (2) Decl. of David Bass in Supp. of the Renewed Application (the "Bass Declaration") [ECF No. 53]; (3) Decl. of Eric Picardal in Supp. of the Renewed Application (the "Picardal Declaration") [ECF No. 54]; and (4) Decl. of Michael Jerome in Supp. of the Renewed Application (the "Jerome Declaration") [ECF No. 55].

# I. BACKGROUND

## A. Procedural History

Empyreal filed its Complaint commencing this action on January 14, 2022.[3] That same day, it filed its first *ex parte* application for a TRO.[4] Four days later, the Court denied that application because Empyreal failed to comply with the requirement of Rule 65 of the Federal Rules of Civil Procedure that, absent special circumstances, a movant must notify the adverse party of the movant's intent to request a TRO.[5] *See* Fed. R. Civ. P. 65. The Court noted that Empyreal not only failed to comply with Rule 65's notice requirement, but it also filed its *ex parte* application in the late afternoon on a Friday before a long holiday weekend.[6] The Court denied Empyreal's first *ex parte* application "without prejudice to Empyreal's right or ability to seek appropriate injunctive relief through a regularly noticed motion."[7] Despite the Court's explicit dictate that Empyreal could seek relief through a "***regularly noticed motion***,"[8] on January 19, the parties submitted a joint stipulation through which Defendants consented to Empyreal filing a renewed application for a TRO.[9] That same day, in accordance with the joint stipulation, Empyreal filed the instant Renewed Application, which is now fully briefed.

Along with its Replies, Empyreal filed three sworn declarations that contain newly presented evidence.[10] Defendant Shannon D. Dicus, the San

---

[3] Unless noted otherwise, all dates are in 2022.
[4] *See Ex Parte* Appl. for TRO [ECF No. 17].
[5] *See* Order Re: *Ex Parte* Appl. [ECF No. 32].
[6] *Id.* at 1-2.
[7] *Id.* at 2 (emphasis removed).
[8] *Id.* (emphasis added).
[9] *See* Joint Stipulation for Extension of Time [ECF No. 35].
[10] *See* Application for Leave; Bass Declaration; Picardal Declaration; Jerome Declaration.

Bernardino County Sherriff, objects to those filings,[11] as do the Federal Defendants.[12] Specifically, Sheriff Dicus notes that while Defendants stipulated to allow Empyreal to file a reply brief, Defendants "did not set aside the well-settled notions of fair play in litigation."[13]

As a general matter, evidence produced for the first time on reply deprives the opposing party an opportunity to respond; it is improper. *See Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 894-99 (1990). Accordingly, Defendants' respective objections are **SUSTAINED**. Furthermore, the Court is compelled to express its concerns regarding Empyreal's litigation tactics. Thus far, Empyreal has: (1) attempted to present new evidence along with its Replies—evidence to which Defendants would have no ability to respond; (2) filed an *ex parte* TRO application late on a Friday afternoon before a holiday weekend without first notifying opposing counsel; and (3) declined to follow the Court's directive to file its next request for relief as a regularly noticed motion. Empyreal may very well have an excellent case on the merits—the Court respects Empyreal's zeal and does not doubt its sincerity—but Empyreal's counsel does their client no favors by cutting procedural corners and ignoring the Court's guidance. *See, e.g.*, Cal. R. Ct. 3.3 & 3.4.

**B.     Factual Allegations**

The following summary of Empyreal's allegations comes from the Complaint and the Renewed Application:

Empyreal is a cash-in-transit (armored car) business that operates in 28 states, including California.[14] Empyreal transports cash for financial institutions and the state-legal cannabis businesses with which those financial institutions do

---

[11]    *See* Def.'s Objs. (the "Sheriff's Objections") [ECF No. 56].
[12]    *See* Defs.' Objs. [ECF No. 58].
[13]    Sheriff's Objections 2:9-12.
[14]    Renewed Application 2:9-10.

business.[15] Empyreal emphasizes that a "significant percentage" of its cash-in-transit business does not involve the cannabis industry.  Empyreal conspicuously fails, however, to disclose that "significant percentage."[16]  Similarly, Empyreal notes that "*most* of its cannabis-industry clients hold medical cannabis licenses,"[17] it but does not define "most."

        Empyreal accuses Defendants of "targeting Empyreal's vehicles for pretextual stops and searches" and "seizing cash and other property lawfully transported therein for civil forfeiture."[18]  Specifically, Empyreal alleges that the Department of Justice (the "DOJ") "is coordinating a federal effort across multiple states, jurisdictions, and DOJ agencies—in cooperation with multiple state and/or local law-enforcement agencies via joint task force investigations—to target Empyreal vehicles for these stops, searches, seizures, and forfeitures."[19]

        Since mid-May 2021, Empyreal's vehicles have been stopped and searched by sheriff's deputies five times—twice in Kansas and three times in San Bernardino County.[20]  Three of those stops resulted in seizures, and only one of the stops involved a warrant.[21]  The specific alleged details are as follows:

---

[15] *Id.* at 2:12-15; Decl. of Deirdra O'Gorman in Supp. of the Renewed Application (the "O'Gorman Declaration") [ECF No. 36-1] ¶ 10.  The Court notes that there are key differences in the language of the Renewed Application and the O'Gorman Declaration.  The O'Gorman Declaration is clear that Empyreal provides services for businesses that sell cannabis. *See* O'Gorman Declaration ¶ 10.  By contrast, the Renewed Application—at least in the passage cited by the Court—strongly insinuates that Empyreal only "serves *financial institutions* that work with state-licensed medical and adult-use cannabis businesses . . . ."  Renewed Application 2:12-13.  The Court once again reminds Empyreal's counsel of their obligation of candor to the Court.  *See* Cal. R. Ct. 3.3; Cal. Bus. & Prof. Code 6068(d).

[16] *See id.* at 2:19-21; O'Gorman Declaration.

[17] Renewed Application 2:22 (emphasis added).

[18] *Id.* at 3:14-16.

[19] *Id.* at 3:19-22.

[20] *Id.* at 4:1-7.

[21] *Id.* at 4:1-9.

- May 17, 2021: Sheriff's officers in Dickinson County, Kansas, stopped an Empyreal vehicle for an allegedly obscured license plate tag.[22] The vehicle was not transporting cash, and no seizure occurred.[23] Sheriff's officers questioned the driver extensively and searched the vehicle.[24]

- May 18, 2021: Sheriff's officers in Dickinson County stopped and searched an Empyreal vehicle and seized approximately $165,620 in cash.[25] Empyreal alleges that the Sheriff's Office worked in conjunction with a Drug Enforcement Agency ("DEA") task force and that the cash that was seized came entirely from state-licensed medical cannabis dispensaries operating lawfully under Missouri law.[26] As a result of that seizure, in September 2021, the United States sought the civil forfeiture of the seized cash.[27]

- November 16, 2021: San Bernardino Sheriff's Department deputies stopped and seized approximately $700,000 in currency from an Empyreal vehicle, as well as the vehicle itself and the driver's business and personal cellphones.[28] Empyreal alleges that "***three of the four*** cannabis businesses whose cash proceeds were seized during the November 16 seizure hold California medical cannabis licenses"— implicitly suggesting that the fourth business does not hold such a license.[29]

---

[22]  *Id.* at 4:11-12.
[23]  *Id.* at 4:13-14.
[24]  *Id.* at 4:14-17.
[25]  *Id.* at 4:18-19.
[26]  *Id.* at 4:20-23.
[27]  *Id.* at 4:23-26.
[28]  *Id.* at 5:3-6.
[29]  *Id.* at 5:10-12 (emphasis added).

- December 9, 2021: San Bernardino County Sheriff's Department deputies stopped an Empyreal vehicle and seized approximately $350,000.[30] On that occasion, all four businesses whose cash proceeds were seized held California medical cannabis licenses.[31]

- January 6, 2022: San Bernardino County Sheriff's Department deputies stopped and searched an Empyreal vehicle and interrogated the driver.[32] When deputies realized that the vehicle was transporting cash from a non-cannabis business, they declined to seize the cash.[33] When the Empyreal driver asked a deputy why Empyreal's vehicles were being stopped so frequently, Empyreal alleges that the deputy told him that it was "political," but declined to elaborate.[34]

The approximately $1,050,000 seized by Sheriff Dicus has been transferred under the DOJ's equitable sharing program to the Federal Bureau of Investigation ("FBI") or other Federal Defendants.[35] Those Federal Defendants are pursuing, or will pursue, the civil forfeiture of that cash.[36]

The stops have hindered Empyreal's business operations. In response to the stops, Empyreal suspended business operations in San Bernardino County and Kanas.[37] The cessation of operations in San Bernardino County was particularly costly because Empyreal was building a vault and processing facility there.[38] Empyreal already spent around $100,000 on the facility, and it is

---

[30]  *Id.* at 5:16-18.
[31]  *Id.* at 5:21-22.
[32]  *Id.* at 5:26-27.
[33]  *Id.* at 6:4-5.
[34]  *Id.* at 6:4-5.
[35]  *Id.* at 6:9-11.
[36]  *Id.* at 6:10-12.
[37]  *Id.* at 7:1-2.
[38]  *Id.* at 7:12-17.

currently incurring costs of $21,000 per month in rent and utilities.[39] Because of the stops and seizures, Empyreal has lost—and will likely continue to lose—potential clients.[40]

Empyreal now moves the Court to issue an OSC for Defendants to demonstrate why a preliminary injunction should not issue.[41] In addition, Empyreal seeks a TRO restraining and enjoining Defendants from: (1) stopping, detaining, or seizing Empyreal's personnel or vehicles absent articulable, particularized reasonable suspicion or probable cause of a traffic violation or criminal conduct; (2) extending the duration of any stop beyond the time necessary to complete the stop's traffic-violation or other probable-caused based reason for the stop; (3) searching Empyreal's personnel, property, or possessions absent probable cause; and (4) seizing Empyreal's property or possessions absent probable cause.[42]

## II.  LEGAL STANDARD

A TRO preserves the *status quo* and prevents irreparable harm until a hearing may be held on the propriety of a preliminary injunction.  *See Reno Air Racing Ass'n, Inc. v. McCord*, 452 F.3d 1126, 1131 (9th Cir. 2006).  The standard for issuing a TRO is identical to the standard for issuing a preliminary injunction.  *Lockheed Missile & Space Co. v. Hughes Aircraft Co.*, 887 F. Supp. 1320, 1323 (N.D. Cal. 1995).

"A preliminary injunction is an extraordinary and drastic remedy; it is never awarded as of right."  *Munaf v. Geren*, 553 U.S. 674, 689 (2008) (citations omitted).  An injunction is binding only on parties to the action, their officers,

---

[39] *Id.*
[40] *See id.* at 8:16-25.
[41] Proposed TRO [ECF No. 36-5] 3:1-2.
[42] *Id.* at 3:10-4:24.

agents, servants, employees, and attorneys and those "in active concert or participation" with them. Fed. R. Civ. P. 65(d)(2).

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). In the Ninth Circuit, "serious questions going to the merits and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Alliance for Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011) (internal quotations omitted).

### III. DISCUSSION

Empyreal provides the Court with no example in which a court issued a TRO like the one that Empyreal requests here. In other words, Empyreal fails to demonstrate that, if it satisfied the *Winter* factors, then the TRO that it seeks is appropriate. The Court need not address that issue, however, because Empyreal fails to satisfy the *Winter* factors. The Court finds that a TRO is not appropriate because—on this record—Empyreal has neither demonstrated that it is likely to succeed on the merits nor that there are "serious questions going to the merits[.]" *Id.* The Court therefore addresses only the likelihood of success on the merits; it does not address the other *Winter* factors.

**A. Other Remedies at Law**

The Federal Defendants argue that Empyreal has an adequate remedy at law by virtue of the commencement of the administrative forfeiture proceedings.[43] Empyreal disagrees, arguing that the Renewed Application

---
[43] Federal Opposition 4:9-10.

-9-

"seeks only injunctive and declaratory relief to prevent *future* stops, searches, and seizures."[44]

The Federal Defendants cite *United States v. U.S. Currency $83,310.78*, 851 F.2d 1231 (9th Cir. 1988), in which the Ninth Circuit declared that "when a civil forfeiture proceeding has been filed, the claimant has adequate remedies to challenge any fourth amendment violation.  Accordingly, ***when a civil forfeiture proceeding is pending, there is no need to fashion an equitable remedy*** to secure justice for the claimant."  *Id.* at 1235 (emphasis added).  Empyreal does not address *U.S. Currency $83,310.78* in its Federal Reply.  The Court notes, however, that the appellant in *U.S. Currency $83,310.78* sought the return of her property.  That case, therefore, seems inapposite to the matter at bar.  Because the Court finds that Empyreal fails to satisfy the merits factor on other grounds, and because no party has briefed this matter sufficiently, the Court declines to rule on this argument.  *See Does 1 v. United States*, 2021 WL 3206808, at *2, n.2 (C.D. Cal. June 7, 2021) (declining to rule on a similar argument "[b]ecause the Court denies Plaintiffs' TRO Application on other grounds").

**B.**   ***Ultra Vires* Acts**

Empyreal argues that it is likely to succeed on the merits because Sheriff Dicus and the Federal Defendants' actions toward Empyreal are beyond their legal authority and are, therefore, void as *ultra vires*.[45]

**1.   The Federal Defendants**

The Appropriations Clause of the United States Constitution provides that "No Money shall be drawn from the Treasury, but in Consequence of Appropriations made by Law"  U.S. Const. art. I, § 9, cl. 7.  That clause "means simply that no money can be paid out of the Treasury unless it has been

---

[44]   Federal Reply 3:9-17 (emphasis in original).

[45]   *See* Renewed Application 14:10-19:14.

-10-

appropriated by an act of Congress." *Off. of Pers. Mgmt. v. Richmond*, 496 U.S. 414, 424 (1990) (quotation and citation omitted).  Empyreal contends that because Congress prohibits the DOJ from spending any funds interfering with state-legal medical cannabis, the Federal Defendants' ongoing seizures are *ultra vires*.[46]  At this stage of the litigation, the Court is not persuaded.

The Federal Defendants and Empyreal agree that Congress prohibits the use of funds to prosecute individuals who are in strict compliance with a state's medical marijuana laws.[47]  Empyreal, however, ignores that Congress's prohibition ***does not apply*** when funds are spent to prosecute "individuals who engage in conduct ***unauthorized*** under state medical marijuana laws." *United States v. McIntosh*, 833 F.3d 1163, 1178 (9th Cir. 2016) (emphasis added).  In *McIntosh*, the Ninth Circuit observed that Congress purposely ***did not*** "prohibit interference with laws that address medical marijuana or those that regulate medical marijuana[.]" *Id*.  Instead, Congress "chose to proscribe preventing states from implementing laws that authorize the use, distribution, possession, and cultivation of medical marijuana." *Id*.

Empyreal bears the burden to show by a preponderance of evidence that it has strictly complied with state medical marijuana laws.  *See United States v. Pisarski*, 965 F.3d 738, 742 (9th Cir. 2020).  Empyreal has not come close to meeting that burden.  Empyreal's only evidence with respect to the issue of strict compliance is self-serving declarations from its CEO, Deirdra O'Gorman.[48]  The value of those declarations is limited.  *See Murphy v. U.S. Bank Nat'l Ass'n*, 2019 WL 1777294, at *4 (C.D. Cal. Apr. 23, 2019) (holding that conclusory and self-serving affidavits are "far from sufficient to show a likelihood of success on the merits.").

---

[46] *Id*. at 16:8-11.
[47] *Compare* Federal Opposition 8:8-12 *with* Renewed Application 17:7-26.
[48] *See, e.g.*, Federal Reply 4:13-5:7.

Those declarations, moreover, raise serious cause for skepticism that Empyreal and its customers were in strict compliance with state *medical* marijuana laws. O'Gorman, for example, notes that "*[m]ost* of Empyreal's cannabis-industry clients hold medical cannabis licenses."[49] The word "most" implies that *some* of Empyreal's cannabis-industry clients *do not* hold medical cannabis licenses. Similarly, O'Gorman testifies that "[t]hree of the four cannabis businesses whose cash proceeds were seized . . . hold California medical cannabis licenses."[50] The Court can only presume that the fourth business did not hold such a license.

Because Empyreal has not shown by a preponderance of evidence that it has strictly complied with California's medical marijuana laws, it has not demonstrated that the Federal Defendants' actions were beyond their authority.

### 2. Sheriff Dicus

In California, a "governmental agency that acts outside of the scope of its statutory authority acts *ultra vires* and the act is void." *California Dui Laws. Ass'n v. California Dep't of Motor Vehicles*, 20 Cal. App. 5th 1247, 1264 (2018). Empyreal notes that "[n]o California law . . . empowers Sheriff Dicus to search and seize property where there is no probable cause for criminal activity."[51] California law is clear that entities transporting cash for *licensed* cannabis providers do not violate California law "solely by virtue of the fact that the person receiving the benefit of any of those services engages in commercial cannabis activity . . . ." Cal. Bus. & Prof. Code § 26260.

Here, the Court again finds that Empyreal has not raised serious questions going to the merits. The only evidence that Empyreal presents is self-serving declarations from its CEO, the limitations of which the Court discusses above.

---

[49] O'Gorman Declaration ¶ 13.
[50] *Id.* at ¶ 31.
[51] Renewed Application 15:1-2.

-12-

In conflict with O'Gorman's declarations is the similarly self-serving Declaration of Sergeant Alex Naoum.[52] That declaration suggests that each of the Sheriff's Department's stops was accompanied by, at a minimum, reasonable suspicion.[53] The Sheriff's Department conducted one of the stops, moreover, under the auspices of a search warrant.[54] Finally, the Naoum Declaration raises serious questions over whether any deputy said that the stops were for political reasons.[55] At this stage, the Court cannot conclude that there are serious questions going to the merits of the argument that Sheriff Dicus acted beyond the scope of his authority.

### C. Constitutional Arguments

Empyreal asserts that Sheriff Dicus is violating Empyreal's rights under the Fourth Amendment and the Due Process Clause of the Fourteenth Amendment.

Under the Fourth Amendment, "[o]fficers are required to have at least reasonable suspicion to stop a vehicle for investigatory purposes." *Jones v. Las Vegas Metro. Police Dep't*, 873 F.3d 1123, 1132 (9th Cir. 2017). Under the Due Process Clause, a person is entitled to "impartial and disinterested" enforcement of laws. *See, e.g.*, *Marshall v. Jerrico, Inc.*, 446 U.S. 238, 242 (1980).

Empyreal's arguments fail for similar reasons that its *ultra vires* arguments fail. Put simply, there is not enough evidence *at this time* to suggest that Empyreal's Constitutional rights were violated.

---

[52] Decl. of Sgt. Alex Naoum in Supp. of the Sheriff's Opposition (the "Naoum Declaration") [ECF No. 46-1].
[53] *Id.*
[54] *Id.* at ¶¶ 4-6.
[55] *See id.* at ¶ 10; Sheriff's Opposition 11:9-14.

## IV.  CONCLUSION

For the foregoing reasons, the Court hereby **ORDERS** as follows:

1. The Renewed Application is **DENIED**.

2. Once again, the Court makes this order **without prejudice** to Empyreal's right or ability to seek appropriate injunctive relief through a regularly noticed motion.

**IT IS SO ORDERED.**

Dated: January 31, 2022

John W. Holcomb
UNITED STATES DISTRICT JUDGE